**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

DANIELLE LANGAN,

                              Plaintiff,

        -against-

STARBUCKS CORPORATION D/B/A
STARBUCKS COFFEE COMPANY,

                              Defendant.

Case No. 3:23-CV-05056-ZNQ-DEA

**Notice Filed**: December 8, 2023

**Opposition Due**: February 2, 2024

**Reply Due**:  February 23, 2024

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO THE DEFENDANT'S NOTICE OF
MOTION TO DISMISS THE COMPLAINT**

---

January 28, 2024

Vincent Miletti, Esq.
**MILETTI LAW, P.C.**
**THE LAW OFFICE OF VINCENT MILETTI, ESQ.**
10 Halletts Point, Suite 1742
Astoria, New York 11102
609-353-6287 (Office)
VMiletti@Milettilaw.com (Email)
NJ Bar 078322013
*Attorney for Plaintiff*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 6

COUNTERSTATEMENT OF FACTS ........................................................... 8

PROCEDURAL HISTORY............................................................................. 9

LEGAL STANDARD...................................................................................... 9

ARGUMENTS ............................................................................................... 11

POINT I ......................................................................................................... 11

PLAINTIFF'S NJLAD CLAIMS ARE TIMELY UNDER THE STATUTE, AND ANY
ALLEGED INADVERTENT DELAY CAUSED BY THE DCR WOULD NOT BAR
PLAINTIFF'S CLAIMS. .................................................................................. 11

   A.  PLAINTIFFS' CLAIMS ARE TIMELY UNDER THE NJLAD...................... 11

   B.  REGARDLESS, ANY INADVERTENT DELAY BY THE DCR SHOULD BE
   EQUITABLY TOLLED. ................................................................................ 11

   C.  COMPARATORS IN THE CASE LAW SUPPORT EQUITABLE TOLLING FOR
   PLAINTIFF................................................................................................... 15

POINT II ......................................................................................................... 17

PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
("IIED") IS ADEQUATELY PLED AND MUST BE PRESERVED........................ 17

   A.  THE DEFENDANT CONTINUES TO HARP ON THE FAULTY LOGIC, IGNORING
   THE DISCRIMINATORY PERIOD AND IGNORING EQUITABLE TOLLING. .............. 18

   B.  PLAINTIFF HAS ADEQUATELY PLED THE ELEMENTS OF IIED, SUPPORTED
   BY THE CASE LAW AND JURY VERDICTS, AND A DENIAL IS IMPROPER............. 18

   C.  PREEMPTION IS IMPROPER HERE PLAINTIFF'S NJLAD CLAIMS PREEMPT HER
   IIED COMMON LAW CLAIM ...................................................................... 22

   A.  DEFENDANTS CONTINUES TO APPLY AN IMPROPER STANDARD AGAINST
   PLAINTIFF................................................................................................... 25

   E.  PLAINTIFF NOT ONLY ALLEGES STARBUCKS ACTIONS CAUSED HER
   SEVERE EMOTIONAL DISTRESS, BUT IT HAS ALSO RESULTED IN A TRAUMATIC
   INCREASE IN HER EXISTING PTSD............................................................. 25

POINT III........................................................................................................ 27

PLAINTIFF'S CLAIM FOR NEGLIGENT RETENTION, SUPERVISION, AND HIRING IS
WELL-PLED AND MUST SURVIVE DISMISSAL. ................................................ 27

POINT IV........................................................................................................ 29

PLAINTIFF'S CLAIM FOR VIOLATION OF §1981 IS WELL-PLED, ALL ELEMENTS ARE
MET AND MUST SURVIVE DISMISSAL. .......................................................... 29

   A.  IN GENERAL, THE PROGRESSION OF 42 USC 1981 IF MOVING TOWARD A
   MORE AMALGAMATED STATUE, LEANING AWAY FROM THE SEMANTICALLY
   CHALLENGED "REVERSE DISCRIMINATION." ............................................. 29

B.   THE ELEMENTS OF A 42 USC § 1981 CASE ARE WELL PLED...............................30

CONCLUSION.................................................................................................................33

# TABLE OF AUTHORITIES

***Cases***

*Altopiedi v. Memorex Telex Corp., 834 F. Supp. 800 (1993)* ........................................................ *14*

*Anderson v. Unisys Corp., 47 F.3d 302 (1995)* ............................................................................ *14*

*Ashcroft v. Iqbal, 556 U.S. 662 (2009)* ...................................................................................... *30*

*Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012)* ......................................................................... *8*

*Brennan v. National Telephone Directory Corp., 881 F. Supp. 986 (1995)* ................................. *14*

*Buckley v. Trenton Sav. Fund Soc., 111 N.J. 355, 366 (1988)* ...................................................... *16*

*Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (2011)* .......................................................... *31*

*Dawson v. Pastrick, 441 F. Supp. 133 (1977)* .............................................................................. *29*

*DiCosala v. Kay, 450 A.2d 508 (1982)* .......................................................................................... *26*

*Dunn v. Warhol, 778 F. Supp. 242, 243 (1991)* ........................................................................... *21*

*Garvey v. Dickinson College, 761 F. Supp. 1175 (1991)* ............................................................... *22*

*Gruver v. Ezon Products, Inc., 763 F. Supp. 772, 776 (1991)* ...................................................... *22*

*Hollander v. Sears, Roebuck & Co., 392 F. Supp. 90 (1975) U.S. Dist. LEXIS 13133 (D. Conn. 1975)* .......................................................................................................................................... *29*

*Kocian v. Getty Refining & Marketing Co., 707 F.2d 748, 753 (3d Cir.)* ...................................... *9*

*Leon v. Rite Aid Corp., 340 N.J. Super. 462, 472 (2001)* ............................................................ *27*

*Maureen Lyon v. Anthony Ross et al., No. MON-L-00101-15* ....................................................... *20*

*McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273 (1976)* ................................................... *29*

*Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (1994)* ......................... *25*

*Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994)* ...................... *9*

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).* *9*

*Phillips v. Cty. of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008)* .................................................... *9*

*Phillips v. Starbucks Corp., 624 F. Supp. 3d 530 (D.N.J. 2022)* .................................................... 30

*Rocks v. City of Philadelphia, 868 F.2d 644, 645 (1989)* ........................................................... 21

*Rosado v. Whitcraft, 2023 U.S. Dist. LEXIS 224332 (2023)* ....................................................... 32

*Ruth DiPalma v. City of Union City, et al., No. HUD-L-001151-18* ............................................ 18

*Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010)* .................................................. 8

*Schafer v. Board of Public Education, 903 F.2d 243, 251 (3d Cir. 1990)* .................................... 9

*Schmidt v. Skolas, 770 F.3d 241, 249 (2014)* ............................................................................ 31

*School District v. Marshall, 657 F.2d 16, 20 (3d Cir. 1981)* ....................................................... 9

*Schweitzer v. Rockwell International, 586 A.2d 383 (1990)* ....................................................... 21

*Shaver v. Corry Hiebert Corp., 936 F. Supp. 313, 316 (1996)* .................................................... 9

*Shumate v. Twin Tier Hosp., LLC, 655 F. Supp. 2d 521, 529 (2009)* ......................................... 25

*Somers Constr. Co. v. Board of Educ., 198 F.Supp. 732, 734 (D.N.J.1961)* ............................... 27

*Spencer v. Princeton Univ., 2020 U.S. Dist. LEXIS 111379 (2020)* .............................................. 8

*Taylor v. Metzger, 152 N.J. 490, 509 (1998)* ............................................................................. 16

*Wagreich v. River Dell Bd. of Educ., 2021 N.J. Super. Unpub. LEXIS 4289 (2021)* .................. 16

*Wagreich v. River Dell Bd. of Educ., 2021 N.J. Super. Unpub. LEXIS 4289, *8* ........................ 28

*Wilson v. Hillsborough Twp. Constr. Dep't, 779 F. App'x 969, 972 (2019)* ................................. 31

*Wright-Phillips v. United Airlines, Inc., 2021 WL 1221111 (2021)* ............................................. 32

*WRMA Broadcasting Co. v. Hawthorne, 365 F. Supp. 577 (1973)* .............................................. 29

**Statutes**

*42 USC § 1981* ...................................................................................................................... 2, 7, 29

*42 USC § 1983* ........................................................................................................................... 29

*Fed. R. Civ. Pro. 12(B)(6)* ...................................................................................................... 5, 8, 9

Plaintiff Danielle Langan ("Plaintiff" or "Ms. Langan") submits this Brief in opposition ("Opposition") to the Defendant Starbucks Corporation d/b/a Starbucks Coffee Company's ("Defendant," "Company," or "Starbucks") notice of Motion to partially dismiss the Complaint pursuant to Fed. R. Civ. Pro. 12(B)(6) ("Motion"), filed on December 8, 2023 (See ECF ¶ 14), and annexed hereto as **Exhibit B**. For specificity, the Defendant seeks to dismiss counts (3) Race Discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"), (5) Retaliation in violation of the NJLAD, (7) Harassment in violation of the NJLAD; (9) Intentional Infliction of Emotional Distress ("IIED"), (10) Negligent Infliction of Emotional Distress ("NIED"), and (11) Negligent Retention, Supervision, or Hiring.

As more thoroughly set forth below and supported by the Declaration of Vincent Miletti, Esq. ("Miletti Decl."), the Declaration of Ms. Danielle Langan ("Langan Decl."), sworn to on January 7, 2024, the original Verified Complaint, sworn to on August 16, 2023 ("Compl." and **Exhibit A**), and all the referenced exhibits and public records, Plaintiff submits this Opposition and respectfully requests this Court to deny the Defendant's Motion in its entirety, and permit this matter to proceed through to discovery unabridged.

## PRELIMINARY STATEMENT

1.      Ms. Danielle Langan was a 20+ year employee with an exceptional record. Plaintiff enjoyed a meteoric rise from barista in November 2000 to Shift Supervisor within 6 months, through her promotion to Store manager in May 2003. During her career, she enjoyed many accolades, including the North Star Hero award, one of the most prestigious awards given by Starbucks. Plaintiff even received praise from management as recently as March 15, 2020. While historically, her career has been fantastic, and her performance has always been top-grade, great

memories are often short-lived, for there is no force like that of systemic and invidious discrimination.

2.     As stated previously, beginning in January 2021, after finalizing their class action issue with the Equal Employment Opportunity Commission ("EEOC"), Starbucks launched a campaign with the aim of correcting their past historical wrongs against minorities, particularly African Americans. Part of this new image and drive at Starbucks entailed taking a firm stance against discrimination in the workplace. Unfortunately for Ms. Langan, this new political ethos that Starbucks sought to employ found her improperly in the line of fire.

3.     Starbucks, needing a person to take the fall, believed that the best way to approach this was to find a Caucasian female and make her the focus of their historical correction campaign. To Starbucks, Ms. Langan was that perfect candidate - trusting, outspoken, loud, living with a disability, having a complex mental state, and wearing her heart on her sleeve - all the perfect personal attributes intentionally selected to be the subject of an invidious campaign of racial and disability discrimination and just the right person to set up as an example of how, given their new aggressive position, they would handle alleged discrimination against minorities.

4.     However, incompetency is a heavily present trait within the management of Starbucks, and as we learned in July 2021 after listening to Mr. Vaughn Clement embarrass himself before the New Jersey Department of Labor, Starbucks truly knows no other business model than systemic discrimination. There is no greater proof of the Defendant's discriminatory business model than their decision to improperly fire a single mother of 3 who, after military service that left her with Post-Traumatic Stress Disorder (PTSD), provided an additional 20 years of exceptional service while working for Starbucks - a decision made with simply no other thought

and intention other than that the need to punish a Caucasian person to show they were serious about correcting their history of discrimination.

5.      Ironically, the trick to correcting their history of discrimination against one race is to somehow discriminate against another race! Perfect scapegoating! While Starbucks, all in the name of pretentiousness, tries to make it appear that they are making smart moves and effectuating dramatic change, the reality is that just like how they missed the target of understanding race relations within the African American community, they further missed the target on how to spot true racism. Consequently and unfortunately, they have destroyed the life of a single mother of 3 who, after serving in the military, dedicated her life to Starbucks for 20+ long years.

6.      The Defendant's Motion to Dismiss should be denied in its entirety based on (a) that the legal standard of plausibility is achieved by Ms. Langan's prima face, well-pled claims, which include all claims under the New Jersey Law Against Discrimination ("NJLAD"), as well as the common law claims of Intentional Infliction of Emotional Distress and Negligent Retention, Supervision, and Hiring, (b) that while we assert that the claims are timely on their face, especially since the latest discriminatory act took place on November 2, 2021, regardless under the doctrine of equitable tolling, Plaintiff's claims are timely, and (c) Plaintiff's claims for discrimination under 42 USC § 1981 are well-pled, meet all elements, and should survive any motion to dismiss.

7.      For all of the foregoing reasons and the argument set forth in detail below, the Defendant's Motion should be denied in its entirety, and this matter should proceed to discovery.

## COUNTERSTATEMENT OF FACTS

8.      The facts relevant to the Plaintiff's Opposition are set forth in the Declaration of Danielle Langan ("Langan Decl."), sworn to on January 7, 2024, the original Verified Complaint, sworn to on August 16, 2023 ("Compl."), and all other accompanying exhibits, along with existing

public records, are incorporated herein by reference. While all the relevant facts are presented in their entirety in the Langan Decl. and the Miletti Decl., we will, for convenience, highlight those facts pertinent to the subject matter herein in their respective sections.

## PROCEDURAL HISTORY

9.     For a complete recitation of the procedural history, with exhibits attached, we respectfully refer this Court to the Declaration of Vincent Miletti, Esq. ("Miletti Decl."), which goes through the entire case history in this matter. Additionally, the Miletti Decl. is supported by the Langan Decl., the Verified Complaint, the attached exhibits, and public records. While all the relevant dates for purposes of procedural history are presented in their entirety in the Miletti Decl., we will, for the convenience of this Court, reference them where necessary in this Opposition and in their relevant sections.

## LEGAL STANDARD

10.     In addition to the already liberal standard, as set forth by the Defendant in their Motion, we also add the following:

11.     To determine whether a plaintiff has met the facial plausibility standard mandated by Twombly and Iqbal, courts within this Circuit engage in a three-step progression. See *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). **First**, the court must "outline the elements a plaintiff must plead to state a claim for relief." See *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). **Second**, the Court "peel[s] away those allegations that are no more than conclusions and thus not entitled to the assumption of trust." *Id*. **Third**, where "there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Spencer v. Princeton Univ.*, 2020 U.S. Dist. LEXIS 111379 (2020).

12.     Furthermore, when it concerns an allegation of a "late-filed" action (which Plaintiff in this matter rejects since the action was not filed late in any instance), this Court has long recognized that (a) even "if a complaint is subject to Fed. R. Civ. Pro. 12(B)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008); (b) the must guide their consideration using the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." See *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993); and (c) this Circuit permits an "equitable tolling," which would permit an inadvertent filing in certain instances.

13.     This Circuit permits equitable tolling in three (3) "principal, although not exclusive" situations in which equitable tolling may arise. See *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994). These "principal, although not exclusive" situations include "if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has been prevented from asserting his or her rights, or (3) if the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. See *Kocian v. Getty Refining & Marketing Co*., 707 F.2d 748, 753 (3d Cir.) (quoting *School District v. Marshall*, 657 F.2d 16, 20 (3d Cir. 1981)). Arguments that a time period should be tolled because an agency either misled or mistakenly ignored a claimant are analyzed under the second aforementioned situation. See *Schafer v. Board of Public Education*, 903 F.2d 243, 251 (3d Cir. 1990); See *Shaver v. Corry Hiebert Corp*., 936 F. Supp. 313, 316 (1996).

14.     As such, while Plaintiff contends that all matters were filed on time and the only obstruction came from the New Jersey Office of the Attorney General, Division of Civil Rights ("DCR"), if this Court has concerns about the timeliness, Plaintiff should not, under the doctrine of equitable tolling, suffer any detriment regarding the timeliness of filing. The DCR should be

held accountable for any hold-ups, which, while out of Plaintiff's control, would prevent Plaintiff from asserting her rights.

**ARGUMENTS**

**POINT I**

**PLAINTIFF'S NJLAD CLAIMS ARE TIMELY UNDER THE STATUTE, AND ANY ALLEGED INADVERTENT DELAY CAUSED BY THE DCR WOULD NOT BAR PLAINTIFF'S CLAIMS.**

15.     In Point I, Defendant contends that the 2-year statute of limitations period for the NJLAD claims expired on February 5, 2023, and argues that Plaintiff waited until August 18, 2023 to file this lawsuit asserting the same NJLAD claims set forth in her DCR Charge. This is outright incorrect for multiple reasons.

a.     <u>**Plaintiffs' Claims Are Timely Under the NJLAD**</u>

16.     The discriminatory period against Plaintiff commenced in or about March 2020 and proceeded well into as late as November 2021 ("Discriminatory Period") as Defendant even continued retaliating against Plaintiff for engaging in her protected rights.

17.     As a matter of fact, the Discriminatory Period was well within the 2-year statute of limitations (which would have been, at a bare minimum, November 2, 2023, two years after Defendant continued discriminatory animus against Plaintiff in retaliation).

18.     Thus, on the face of the case file, we find that the last discriminatory act occurred on November 2, 2023, since Defendant continued retaliating against Plaintiff in further opposition to Plaintiff's desire to seek relief under her protected rights.

b.     <u>**Regardless, Any Inadvertent Delay by the DCR Should Be Equitably Tolled.**</u>

19.     The facts are that on or about **July 26, 2021**, Plaintiff filed a Charge of Discrimination ("Charge") with the New Jersey Office of the Attorney General, Division on Civil

Rights ("DCR") and the Equal Employment Opportunity Commission ("EEOC") complaining of acts of discrimination alleged herein. See **Exhibit C** for the July 26, 2021 Charge.

20.      At this time, Plaintiff, having no money to her name, focused on her application for Unemployment Benefits ("UI") with the New Jersey Department of Labor ("NJDOL"). On **February 6, 2021**, Plaintiff filed her application for UI Benefits.

21.      On **May 17, 2021**, the NJDOL ruled in favor of Defendant. Plaintiff filed her Appeal to the decision on May 24, 2021.

22.      On **July 2, 2021**, Plaintiff registered for the UI appeal. The hearing was set for July 9, 2021.

23.      On **July 9, 2021**, as Defendant was unprepared for their hearing, without any facts on hand, a Decision was rendered in favor of Plaintiff for the time being, and Defendant was permitted additional time to secure first-hand witnesses in support. A copy of the interim decision dated July 9, 2021, is annexed hereto as **Exhibit E**.

24.      As stated, on **July 26, 2021**, Plaintiff filed her Charge with the DCR and EEOC alleging discrimination. See **Exhibit C.**

25.      Plaintiff, in desperate need of money as a single mother, solely responsible for three (3) daughters between the ages of 8 – 14 (at the time of the discriminatory acts and claims filed) with no help from her former partner, began to contact the NJDOL in a panic, to resolve this issue. As such, the NJDOL set the hearing for **September 20, 2021**.

26.      On **October 21, 2021**, the decision was rendered and determined in favor of Plaintiff. In short, the Appeals Examiner, Ms. Basant Kotb, determined that (a) Starbucks was unable to produce a credible witness, (b) their inability to produce a first-hand witness to anything

compromised their claims, and (c) Starbucks was unable to produce any information to meet their burden. The misconduct charge was overturned, and Ms. Langan was awarded her benefits.

27.     With at least some funds in hand, despite the hardship of being a single mother of 3, Ms. Langan was able to divert her attention to the DCR matter.

28.     In November 2021, Ms. Langan began to reach out to the DCR on numerous occasions. The investigator assigned to the DCR was Mr. Ronald White ("Mr. White"), who was then employed with the Office of the Attorney General, Department of Law & Public Safety. The NJDCR provided the docket number DCR #E2021-003276, upon filing. See **Exhibit C**.

29.     Ms. Langan called the DCR numerous times, at least weekly (Langan Decl. ¶ 72). It wasn't until January 29, 2022, after the holidays, and only after Counsel for Ms. Langan stepped in and reached out to the general inbox, that Ms. Langan was able to touch base with Mr. White. Mr. White apologized for the inadvertent delay and advised (a) he was transitioning out of the department and preparing his files to be forwarded to the agent coming after him, (b) due to the holidays and the office being short-staffed, they just coincidentally missed each other, and it wasn't until after the New Years that they were able to connect.

30.     During this time, in an attempt to cause more anxiety and frustration, as well as to continue retaliating against Ms. Langan, Starbucks filed a Notice of Appeal to the October 22, 2021 determination on November 2, 2021, even though they had already been found to have no evidence, no credibility, and no witnesses (See **Exhibit D**).

31.     Ms. Langan, receiving notice of this, began to suffer from panic and tremors, as the nightmare just continued to cause her substantial grief and emotional distress (Langan Decl. ¶ 73)

32.     Finally, after the substantial delay attributable to the DCR, they finalized her DCR Complaint on February 16, 2022, and transferred the case to another investigator.

33.     In May 2022, Plaintiff discovered that the new investigator was Mr. Darrell Booker ("Booker"). As more thoroughly discussed in the Miletti Decl. and Langan Decl., again, the continued delay at the NJDCR was ever-present. Mr. Booker allegedly claimed that he wasn't even aware the claim was transferred to him until his initial response to us on May 27, 2022:

> On 05/27/2022 10:23 AM Darrell Booker <darrell.booker@njcivilrights.gov> wrote:
>
> Vincent, when you get a chance, give me a call at 609-254-9726. I haven't reviewed the file yet and was not aware it had been transferred to me. Let's discuss the matter. Thanks.

34.     Mr. Booker displayed a continuous pattern of delay and neglect of this case file. He would only respond to communications after every 3 or 4 attempts, and every response resulted in more delays:

> On 06/08/2022 9:41 AM Darrell Booker <darrell.booker@njcivilrights.gov> wrote:
>
> Hello Vinny,
>
> I was out of the office yesterday. If you're around today, I'm around after 2pm. Thanks

35.     As you can see, there was never an issue of untimely filing. For whatever reason, the DCR was simply unable to manage this case. It was first addressed late, then assigned to someone who was leaving the department and, thus, requiring reassignment. The Complaint was also rushed, and then the tradition of delays continued once reassigned.

36.     None of this was due to any party on the Plaintiff's side. Plaintiff has been diligent with **multiple emails** and **phone calls**.

37.     Under the doctrine of *Equitable Tolling*, as specified in *Shaver*, Plaintiff was prevented from asserting her rights due to the bureaucratic and consistent delays by the DCR. See *Kocian*.

c.   **Comparators in The Case Law Support Equitable Tolling for Plaintiff.**

38.     In *Shaver*, the court ruled in favor of equitable tolling based on the findings that the plaintiff (a) preserved his rights by reaching out to a local office in Pittsburg, PA, to file a charge of discrimination, (b) was given advice that was improper by the agency, (c) acted on that advise, and (d) filed his claim well beyond the available statute.

39.     In *Anderson v. Unisys Corp.*, 47 F.3d 302 (1995), the court ruled in favor of equitable tolling based on (a) the plaintiff's clock began when the plaintiff was laid off on April 2, 1990, (b) the plaintiff reported this to the state agency in Minnesota ("MN") in fall 1990, and was told that he has 1 year to report his claim, (c) the plaintiff went to the EEOC due to delay by the MN agency, and filed, believing he had at least another year to file, and (d) filed his administrative charge well beyond the 300-day deadline for the EEOC, as well as well beyond the state statute of limitations.

40.     In *Altopiedi v. Memorex Telex Corp.*, 834 F. Supp. 800 (1993), this Court also applied the doctrine of equitable tolling under similar circumstances. In *Altopiedi*, (a) the plaintiff was dismissed on October 10, 1990, (b) he contacted the state agency in March 1991, (c) he was given a questionnaire in April 1991, and told to return it after the deadline to file their charge, and (d) following the agencies advice, plaintiff filed late. This Court found that the plaintiff had done everything within his power except sign the formal charge within the permissible 180-day period and that this failure was caused - and excused - by the bureaucratic delay of the state agency. Citing to *Brennan v. National Telephone Directory Corp.*, 881 F. Supp. 986 (1995), this Circuit ruled in favor of the plaintiff and permitted equitable tolling.

41.     Here, similar to the facts in *Altopiedi*, *Shaver*, and *Anderson*, the facts show that (a) Ms. Langan needed immediate funds as a single mother of 3 with no help and, thus, all attention

was focused on trying to receive UI Benefits until the determination by the NJDOL on October 22, 2021, (b) between Ms. Langan and her attorney, there were at least 20 separate attempts to communicate with the NJDCR, including emails from the NJDCR indicating that they weren't even aware of the claim once it was assigned to them, and (c) we routinely asked the DCR that if they were not going to conduct an examination or render a determination, they should tell us so that we could move on, but we were continuously informed that it was still under investigation (Langan Decl. ¶75).

42.    Plaintiff has constantly and persistently reached out to the NJDCR, but has been continuously strung along. Thus, not only were the initial delays attributable to the NJDCR, but even when Plaintiff was finally able to get in touch with the NJDCR, she was told that they were currently carrying out the investigation.

43.    The facts support the conclusion that Plaintiff relied on the DCR on how to best move this matter forward and in the quickest way possible, but was continuously told that the DCR was working on it. The facts here tell us that Plaintiff and Counsel had done everything in their power, other than physically going to the location and screaming at someone, which would have been futile as everyone was working remotely due to the pandemic. Furthermore, it would not have been practical since Plaintiff is a single mother of 3 kids without help - who would have been looking after her children? But this would have never occurred had it not been for the DCR's horrible bureaucratic delay.

44.    While we disagree with the February 4, 2021 commencement date for the statute of limitations and contend that the statute of limitations doesn't commence until November 2, 2021, as an alternative, since this Court must assume the truth of the pleaded facts and considering

*Altopiedi, Shaver,* and *Anderson*, the limitations period was tolled between July 21, 2021, through this lawsuit on August 16, 2023.

## POINT II

**PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ("IIED") IS ADEQUATELY PLED AND MUST BE PRESERVED.**

45.     As a preliminary matter, Plaintiff Counsel has reviewed the law and is concerned about an error in the Verified Complaint. The law cited to by Plaintiff Counsel should have solely read only for the claim of Intentional Infliction of Emotional Distress ("IIED") and not a Negligent Infliction of Emotional Distress ("NIED"). As Plaintiff's claim is actually a claim for IIED and not for NIED, Plaintiff will not oppose the dismissal of the NIED claim should this Court determine that its dismissal is warranted.

46.     To successfully assert a cause of action for IIED, Plaintiff must successfully allege in their Verified Complaint that (1) the defendant acted intentionally or recklessly, 2) the defendant's conduct must be extreme and outrageous, 3) the defendant's actions must have been the proximate cause of the plaintiff's emotional distress, and (4) the emotional distress suffered by the plaintiff must be so severe that no reasonable person could be expected to endure such distress. See *Buckley v. Trenton Sav. Fund Soc*., 111 N.J. 355, 366 (1988); *Taylor v. Metzger*, 152 N.J. 490, 509 (1998).

47.     In considering this Motion to dismiss, the non-moving party, who is the Plaintiff in this matter, is entitled to all favorable inferences that reasonably may be drawn. As the facts successfully allege a proper cause of action for IIED, this Court must find that the cause of action for IIED survives the Motion to Dismiss. See *Wagreich v. River Dell Bd. of Educ.*, 2021 N.J. Super. Unpub. LEXIS 4289 (2021).

### a. **Defendant Continues to Harp on the Faulty Logic, Ignoring Both the Discriminatory Period and Equitable Tolling.**

48.     Defendant continues to cite the faulty logic in their position and disregards the case law concerning equitable tolling.

49.     As asserted in Point I, the statute of limitations doesn't begin to accrue until November 2, 2021, as Defendant continued their retaliatory oppression, discrimination, and harassment against Plaintiff, driven by their discriminatory animus against her race and disabilities, and further causing substantial emotional distress, strife, and mental anguish against a single mother of 3. Defendant also continued to leverage their substantial pool of resources to assert fictitious misconduct claims, which have already been disputed and ruled against, knowing they have (a) no records, (b) no first-hand witnesses, and (c) no credibility. Furthermore, as previously discussed and as this Circuit has found in *Altopiedi*, *Shaver*, and *Anderson*, along with many other cases, it would still be timely under the application of equitable tolling, as Plaintiff has been prevented from asserting her rights due to the DCR's bureaucratic delays. Thus, Plaintiff should not be punished as this was not her fault whatsoever.

### b. **Plaintiff has Adequately Pled the Elements of IIED, Supported by The Case Law and Jury Verdicts, And A Denial Is Improper.**

50.     As Defense Counsel appears to have missed the elements in the Verified Complaint, we will point them out for them.

51.     First, Starbucks, in fact, "acted intentionally or recklessly," both in doing the act and in causing emotional distress. Ms. Langan alleges in her Complaint that Starbucks (a) has intentionally targeted her since after their previous settlement, she was seen as a target in a campaign to correct their historic racism and discrimination against African Americans (Compl. ¶5), shortly after finalizing their previous lawsuit with the EEOC, (b) that since this intentional

targeting in March 2020, they have only escalated the discriminatory and retaliatory treatment by creating a false narrative and accusations against her, looking to destroy not only her career, but her person in the process, (c) by attempting to get other employees to testify against her, which will never happen because contrary to their intentional lies, she was liked by everyone, and (d) these intentional and reckless acts went well into November 2021 as Starbucks is well aware that their claims against Ms. Langan are false, the NJDOL found them false, they have no facts, they have no case file, they have no employee file, they have no first-hand witnesses. Their only witness, Regional Manager Mr. Vaughn Clement, who testified, couldn't even utter a single word to defend the actions of Starbucks, so much as being given time to find a case by the NJDOL, but found nothing.

52.     Second, the Defendant's conduct is most certainly "so outrageous in character, and so extreme, as to go beyond all possible bounds of decency." Simply put, Starbucks has engaged in an invidious campaign of race and disability discrimination and wrongful termination of a single mother of 3, a military veteran who has PTSD, with a straight face, with no proof whatsoever of their claims of misconduct, tries to say that there was some serious, legitimate business reason for their discriminatory, hostile, and offensive acts, but can't seem to produce even a single witness in now 2 years.

53.     Verdicts have been rendered in favor of plaintiffs for far less than what Starbucks has done, as they have literally leveraged the entire billion-dollar Company to oppress Ms. Langan and force her to take the fall. Let's look at comparators and see where Ms. Langan fairs in terms of bad facts:

54.     In *Ruth DiPalma v. City of Union City, et al*., No. HUD-L-001151-18, the Jury found that the City had intentionally inflicted emotional distress against DiPalma, resulting in a

verdict of $558,633.25. The acts giving rise to the IIED ruling in Ruth DiPalma's favor included (a) being told she was "too old" for the job and she should just "retire and collect a pension," (b) the City failed to take any corrective action to remediate the situation, and (c) being accused of having stolen $20 from a cashier drawer in the tax office, knowing full well that there was no evidence to prove the allegation since it was a fabricated accusation by the City.

55.     Comparing this to Ms. Langan's case, (a) she has been falsely accused of racism, not only to her face, but to all her peers, to the extent that Starbucks had to write a letter in support of the nonsense (Compl. ¶ 51), (b) Starbucks continued to advance this false charge with absolutely no facts, no first-hand witnesses, and no supporting evidence, which was even determined by the NJDOL (Compl. ¶ 54), and (c) when Ms. Langan attempted to address the false allegations in October 2020 to her manager, Mr. Clement, she was intentionally ignored and stonewalled (Compl. ¶ 44).

56.     For a case that revolved around a fictitious claim that the plaintiff stole $20 from a cashier drawer versus a 2-year onslaught against Ms. Langan, who was wrongfully accused of racism without a single shred of evidence, having an invidious and discriminatory campaign set against her, being treated as a sacrificial lamb and scapegoat to help the Defendant's self-righteous campaign, and being tortured with substantial emotional distress, notwithstanding the fact that she's been on therapy and taking medication for having PTSD, it seems pretty clear here that the Defendant's actions undoubtingly provide enough for a prima facie case of IIED.

57.     Third, the Defendant's actions were more than just the "proximate" cause of the emotional distress; they were the DIRECT cause of her emotional distress as she was the improper target and straw-woman of their campaign to correct their historical wrongs against African Americans and to do so, they have decided that they would improperly fire a single mother of 3,

with PTSD, exacerbated by the discriminatory animus, hostility, and hostile work environment that is Starbucks (Compl. ¶6)

58.     Finally, no reasonable person should be expected to endure and tolerate the discriminatory treatment and emotional distress suffered by Ms. Langan and caused by Starbucks. In fact, when you review the verdicts, you find much lesser hostile environments where the jury found that such treatment was unreasonably stressful. For example, *DiPalma*'s case was far less egregious, with the false claim of stealing $20 from a cashier drawer, being called "too old," being told to "retire and get a pension," and being threatened with arrest.

59.     There is also *Maureen Lyon v. Anthony Ross et a*l., No. MON-L-00101-15, in which a jury rendered a determination that suffering from (a) obscene gestures, (b) throwing snowballs, (c) running a noisy truck engine, and (d) false complaints was enough to meet the claim of IIED. The determination for the jury was that because they were done intentionally, these acts were enough to constitute IIED, enough to be so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency that no reasonable person should endure. The jury even provided for punitive damages!

60.     So, let's now compare *Lyons* to the current proceeding. In *Lyons*, the jury determined that a reasonable person should not endure (a) obscene gestures, (b) being the recipient of snowballs, (c) having to listen to a noisy truck engine, and (d) having to suffer from false complaints.

61.     What would the jury in *Lyons* say if they were told that a single mother of 3, living in poverty and with PTSD, was a victim of (a) insulting remarks and commentary, being accused of racism, while everyone closest to and around her comes from diverse races (Compl. ¶69), (b) being the recipient of numerous false allegations, appeals that are simply improper, fending off

attacks of misconduct that do not exist (Compl. ¶3), (c) having to suffer from sleepless nights, anxiety, depression, fear, and apprehension of homelessness for her and her children, because of the acts of Starbucks, their wrongful termination, and the emotional distress that comes along with it (Compl. ¶44), and (d) having to endure the said fictitious accusations, now for 2 years, while there is not a single shred of evidence in response? (Compl. ¶51),

62.      Yes. This is well-pled. It was well-pled in the Complaint. While it is a legally viable claim, it continues to be supported by Ms. Langan's Decl.

63.      The Court must accept as true all well-pleaded factual allegations in the complaint and all reasonable inferences that can be drawn from them and must view them in the light most favorable to the plaintiff. See *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (1989).

64.      Assuming the facts as pled by Plaintiff are true - and when you put Ms. Langan's claims and the claims that a JURY has determined constitute IIED side by side, especially since the Plaintiff's Verified Complaint contains sufficient facts to support a reasonable inference that there was conduct that would be considered "extreme" or "outrageous," (at least as per the juries in DiPalma and Lyons), this claim survives a motion to dismiss.

c.   **Preemption Is Improper Here Since The Plaintiff's NJLAD Claims Preempt Her IIED Common Law Claim**

65.      This Circuit has, in the past, recognized that when it comes to the tort of IIED, it has created an exception to the exclusivity provision for intentionally tortious conduct by third persons, including fellow employees, when it is directed at employees for personal reasons. See *Dunn v. Warhol*, 778 F. Supp. 242, 243 (1991); See *Schweitzer v. Rockwell International*, 586 A.2d 383 (1990).

66.      Courts have also held that when the alleged emotional distress arises from harassment that is being personal in nature and not part of the proper employer/employee

relationship, a court should conclude that such claims are not preempted. See *Gruver v. Ezon Products, Inc.*, 763 F. Supp. 772, 776 (1991). A more common example of this is a "sexual harassment" claim in the workplace, being that such harassment has nothing to do with work.

67.     Here, the attacks on Plaintiff's race and disability, particularly since the question regarding her performance in the workplace never arose until the UI Benefits hearing in July 2021 (Compl. ¶ 54) since her work performance was always exceptional, are personal toward Ms. Langan. Also, the decision to attack and discriminate against her was in part due to her very personality because she was trusting, outspoken, loud, with a disability, had a complex mental state, and wore her heart on her sleeve; all the perfect personal features intentionally selected to suit Defendant's invidious campaign of racial and disability discrimination

68.      and smear her life, personality, and career.

69.     The case captioned *Garvey v. Dickinson College*, 761 F. Supp. 1175 (1991) discusses the dilemma where a plaintiff who had alleged sexual harassment by her supervisor had asserted a cognizable claim for intentional infliction of emotional distress. The Court concluded that such claims are not preempted since the distress alleged arises from harassment that is personal in nature and is not part of any legitimate employer/employee relationship.

70.     The distress associated with these aggressive and false claims against a Caucasian female, military veteran, with a history of PTSD, and having personality traits that make her an easy target, which of the Defendant's actions that led to the emotional distress arose from a legitimate employer/employee relationship? In other words – in what legitimate employment relation does such animus discriminatory treatment arise?

71.     It does not follow, however, that discrimination and harassment by a supervisor, who also happens to be the victim's employer, is related to the scope of her employment. In what

instance does this Court conceive that discrimination based on race and harassment based on one's disability by an employer or an employer's agent in the workplace is properly characterized as employment-related?

72.    In the first instance, **intending** to cause emotional distress means saying something different from the action that **resulted** in emotional distress. In a claim for IIED, we are arguing that the actions taken by the employer were intended to cause emotional distress. In a discrimination claim, the emotional distress suffered results from the discrimination.

73.    This is what the Court found in *Dunn v. Warhol*, 778 F. Supp. 242, 244 (1991), and the same rationale here applies. Otherwise, we are just blending these terms, which results in an equivocation fallacy. They improperly apply to the same type of "emotional distress" in both instances, causing an improper equivocation. The "emotional distress" in a claim for IIED is an intentional act by a party. The emotional distress suffered under the NJLAD is a resulting injury and an impact of improper behavior. They are two very different things here and can exist independently from each other.

74.    Therefore, notwithstanding the fact that they are looking to eliminate the NJLAD claims on erroneous grounds, Defendant looks to have their cake and eat it too because they would also like to say that this claim they are looking to have eliminated from the Complaint should also serve as a way to preempt the IIED claim. Meanwhile, if they had their way, there would be no NJLAD claim to preempt.

75.    This argument gets more and more unstable and implausible as you continue to break it down. Suffice it to say (a) the IIED claim is personal to Ms. Langan, (b) there is no proper employee/employer relationship that finds race and disability discrimination as a legitimate derivative from that relationship, (c) the NJLAD and IIED claims live independent of one another

and are mutually exclusive, mainly since one is an offensive claim, and the other one is a byproduct of the discrimination, and (d) to permit a claim they would like to eliminate to simultaneously be a claim that preempts other claims, is outright illogical.

### a. **Defendant Continues To Apply An Improper Standard Against Plaintiff.**

76.     Defendant is applying the wrong standard on a Motion to Dismiss. Defendant contends that a plaintiff must show that Defendant "intend[ed] to both 'do the act' and 'produce emotional distress.'" This is incorrect because, on a Motion to Dismiss, the plaintiff must make a prima facie case and adequately plead their case. Defendant intended to publicly shame Ms. Langan (Compl. ¶ 49), to wrongfully terminate Ms. Langan (Compl. ¶71), to use Ms. Langan as the straw woman to take a fall for their pretentious campaign (Compl. ¶ 6), and have done so in part based on her personality (Compl. ¶ 5). Plaintiff survives the Motion to Dismiss as it is well-pled, and she is not required to prove any case beyond all doubt at this time.

### e. **Plaintiff Not Only Alleges Defendant's Actions Caused Her Severe Emotional Distress, But It Has Also Resulted In A Traumatic Deterioration of Her Existing PTSD.**

77.     First, notice the equivocation again and why there should be no preemption. In the argument against the IIED claim, which is a specific cause of action brought forward on *offense* and by Plaintiff, we now shift the scope of how we view the emotional distress and consider whether Defendant's acts caused Ms. Langan to suffer from severe emotional distress.

78.     Thus, in this section of the Motion, Defense Counsel is looking to defeat the IIED claim. However, in their own confusion and blending of the analysis, they are now looking at whether all the acts in the Complaint *caused* severe emotional distress.

79.     This fact is not for a Court to decide on a motion to dismiss. Assuming the facts as pled in the Verified Complaint are to be true, if the Verified Complaint speaks of facts where Ms.

Langan felt "defamed," "ostracized," "attacked," "stonewalled," and "targeted" (Compl. ¶ 5, 6, 41) and that such impact was "severe," causing substantial injury and harm (Compl. ¶147-149), then the only logical conclusion on the standard is that for purposes of a Motion to Dismiss, Plaintiff prevails.

80.     Moreover, in addition to the facts pled in a complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint, and items appearing in the record of the case." See *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 2 (1994), See *Shumate v. Twin Tier Hosp.*, LLC, 655 F. Supp. 2d 521, 529 (2009)

81.     As stated by Ms. Langan in her Declaration (Langan Decl. ¶ 85), in addition to exacerbating her PTSD, she has suffered from the following: (a) fatigue, (b) muscular tension, (c) headaches, (d) heart palpitations, (e) insomnia, (f) gastrointestinal issues, (g) dermatological issues, (h) depression and anxiety, (i) discouragement, (j) disinterest, (k) pessimism, (l) feelings of being overwhelmed and an inability to cope, (m) cognitive difficulties, (n) aggression, (o) diminished creativity and initiative, (p) problems with interpersonal relationships, (q) mood swings and irritability, lower tolerance to frustration and impatience, (r) isolation, (s) embarrassment, (t) stress, and (u) feeling heartbroken. While her medications needed to be increased, she has required more therapy sessions. Simply, the situation has just gotten worse for her.

82.     Again, we refer you back to comparative jury determinations. As stated previously in Lyons, juries have held that no reasonable person should endure acts like (a) obscene gestures, (b) being the recipient of snowballs, (c) having to listen to a noisy truck engine, and (d) having to suffer from false complaints.

83.     Here, we have a single mother of 3, living in poverty, living with PTSD since leaving military service, and a victim of (a) insulting remarks and commentary (being accused of racism, while everyone closest to and around her comes from diverse racial groups) (Compl. ¶69),

(b) being the recipient of numerous false allegations, appeals that are simply improper, fending off attacks of misconduct that do not exist (Compl. ¶3), (c) having to suffer from sleepless nights, anxiety, depression, fear, and apprehension of homelessness for her and her children, because of the Defendant's acts, their wrongful termination, and the resulting poverty (Compl. ¶44), and (d) having to endure the said fictitious complaints, now for 2 years. Meanwhile, there is not a single shred of evidence in response. (Compl. ¶51).

84.     No jury finds or can find how Ms. Langan was treated to be proper. No jury would rule that it would be unreasonable to claim that Plaintiff suffered from emotional distress in this matter.

85.     As a way of extending courtesy, if Defendant would like to revisit this afterward, we suggest it be done through discovery. Defendant can even go ahead to subpoena the medical records from Ms. Langan's medical providers (of course, with proper protections and confidentiality orders in place), but to say that Plaintiff did not properly plead her case at this point is simply ludicrous.

86.     In conclusion, Plaintiff's IIED claim is proper and should proceed to discovery for further development.

## POINT III

### PLAINTIFF'S CLAIM FOR NEGLIGENT RETENTION, SUPERVISION, AND HIRING IS WELL-PLED AND MUST SURVIVE DISMISSAL.

87.     First, this is completely incorrect on Defendant's part because they cite case law that had already survived a Motion to Dismiss and even a ruling issued after the full discovery of the parties. See *DiCosala v. Kay*, 450 A.2d 508 (1982), cited as the leading case.

88. The standard in reviewing a Motion to Dismiss is not concerned with the ability of plaintiffs to prove the allegation contained in the complaint." See *Printing Mart-Morristown*, 116 N.J. at 746 (citing *Somers Constr. Co. v. Board of Educ.*, 198 F.Supp. 732, 734 (D.N.J.1961)).

89. The court's inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint after an in-depth search made with liberality to discern whether a cause of action is found, even in an obscure statement of claim. Such a motion "must be denied if the claim has been made out." See *Printing Mart-Morristown, supra*, 116 N.J. at 772.

90. To be clear, in the early stages of litigation, the plaintiff's obligation ... is not to prove the case but only to make and present claims which, if proven, would constitute a valid cause of action. See *Leon v. Rite Aid Corp.*, 340 N.J. Super. 462, 472 (2001).

91. Here, Defendant argues that Plaintiff **has failed to prove** that (1) Starbucks knew or had reason to know of the particular unfitness, incompetence, or dangerous attributes of an employee, (2) Starbucks could reasonably have foreseen that such qualities created a risk of harm to other persons, and (3) that the Company's negligence in hiring, retaining, or supervising the employee permitted the employee's incompetence, unfitness, or dangerous characteristics to proximately cause injury to Ms. Langan.

92. Saying that a requirement to "**prove**" exists is the wrong standard.

93. First, this Court can easily glean a cause of action for negligent hiring, supervision, evaluation, and retention. It can also review the Verified Complaint and easily see that (1) it is easy to show that Starbucks had reason to know of their employee's unfitness - a personal example is sending Mr. Clement to the UI Benefits hearing without a single piece of evidence, witness testimony, or any proofs, and then pulling him out of the hearing when it was determined he was clueless about employee relationships and how human resources functioned at Starbucks, (2) it is

easy to show that a global employer such as Starbucks, employing hundreds of employees worldwide would understand the risk they have by keeping, retaining, hiring, or failing to supervise, incompetent employees, and (3) Ms. Langan is a perfect example of what happens when incompetent employees are hired, unsupervised, untrained, and retained – employees lives could be ruined in the process.

94.     Second, applying the relevant standard, it is clear that this Motion is premature. See *Wagreich v. River Dell Bd. of Educ.*, 2021 N.J. Super. Unpub. LEXIS 4289, *8

95.     Discovery is warranted to demonstrate how Defendant may or may not have discriminated against Plaintiff, whether Defendant may or may not have retaliated, and whether Defendant may or may not have engaged in each common law claim.

96.     When granting Plaintiff all favorable inferences, this Court must find that the factual allegations culminate in a cause of action. The Court's inquiry is limited to examining the sufficiency of the facts alleged on the face of the Plaintiff's Complaint through an in-depth search to discern whether the requirements for a cause of action have been met.

97.     Certainly, Defendant will have an opportunity to absolve themselves of any liability, but not now because the Court may not determine as much at this time. As such, Plaintiff's claim for negligent hiring, supervision, evaluation, and retention must survive.

### POINT IV

### PLAINTIFF'S CLAIM FOR VIOLATION OF §1981 IS WELL-PLED, ALL ELEMENTS ARE MET AND MUST SURVIVE DISMISSAL.

a.  **In General, The Progression of 42 USC 1981 If Moving Toward A More Amalgamated Statue, Leaning Away From the Semantically Challenged "Reverse Discrimination."**

98.     For starters, I'm unsure of the references here since there appears to be conflicting law. Admittedly, to Plaintiff Counsel, **discrimination** is **discrimination**, and from a linguistic

standpoint, **it is a misnomer to say "reverse discrimination" because that implies that the person asserting it cannot suffer "discrimination."** Discrimination is not, and was never, a concept that could only be felt by someone who is Caucasian – discrimination is something felt by all human beings.

99.     Of course, I don't expect Starbucks to understand because all they know how to do as a business is discriminate against blacks, whites, and any other race you fancy. It just depends on the politics of the game at the time.

100.     But courts appear to understand the semantics, as they have ruled in numerous cases with a rationale similar to mine, that (a) under 42 USC § 1981, "all persons" protected can also include white persons. See *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273 (1976), (b) it is entirely consonant with the purpose of 42 USC § 1981 that whites discriminated against for racial reasons should have standing under 42 USC § 1981 to bring suit to redress wrongs. See *WRMA Broadcasting Co. v. Hawthorne*, 365 F. Supp. 577 (1973), and (c) officially, 42 USC § 1981 provides a cause of action for white victims of racial discrimination. See *Hollander v. Sears, Roebuck & Co.*, 392 F. Supp. 90 (1975) U.S. Dist. LEXIS 13133 (D. Conn. 1975).

101.     What appears to be happening in law is that § 1981 and § 1983 are beginning to be used interchangeably, with the only unique qualifier of § 1981 being that it is broader, whereas § 1983 requires a "person." See *Dawson v. Pastrick*, 441 F. Supp. 133 (1977).

102.     Either way, Plaintiff is not concerned so much as to whether it be 42 USC § 1981 or 42 USC § 1983, for that matter, as even under the more current, evolved interpretations by courts, Plaintiff readily meets the prima facie case for racial discrimination under 42 USC § 1981.

b.     <u>**The Elements of a 42 USC § 1981 Case Are Well Pled.**</u>

103.    It's ironic that Defense Counsel would make this argument in light of *Phillips v. Starbucks Corp.*, 624 F. Supp. 3d 530 (D.N.J. 2022), as this case is pretty clear on its face.

104.    *Phillips* drew a clear line in the sand showing the difference between a standard discrimination claim under *McDonnell Douglas* and the misnomer variation, "reverse race discrimination" under Ellis that Plaintiff need not plead that she is a member of a protected class.

|   | McDonnell Douglas[1] Analysis (Standard) | Phillips[2] Analysis (Reverse) |
|---|---|---|
| 1 | Plaintiff is a member of a protected class; | |
| 2 | Plaintiff was qualified for the job that she held; | Plaintiff is qualified for her position |
| 3 | Plaintiff was terminated; and | Plaintiff suffered an adverse employment action |
| 4 | Plaintiff's replacement comes from a different race than the plaintiff, or there is some other basis (such as comparator or statistical evidence) for inferring discriminatory intent. | adverse employment action gave rise to an inference of **discrimination**. |

105.    It is easy to see from the facts that Plaintiff has readily met the prima facie test for a Philips Analysis of discrimination.

106.    First, it is without a doubt that Plaintiff, a 20-year employee at the time of her wrongful termination, had received awards and accolades and was well qualified for her position (Compl. ¶ ¶ 27-33). Second, certainly, being wrongfully terminated constitutes an adverse employment action. Third, on a Motion to Dismiss standard, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." See *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

107.    To determine the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must (1) take note of the elements a plaintiff must plead to state a claim, (2) identify the allegations that

---

[1] *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 800-02, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). See also *Jones*, 198 F.3d at 410-11 (3d Cir. 1999).
[2] *Phillips v. Starbucks Corp*., 624 F. Supp. 3d 530, 539 (D.N.J. 2022)

are not entitled to the assumption of truth because they are no more than conclusions, and (3) where there are well-pleaded factual allegations … assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. See *Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 221 (2011). Courts must construe the allegations in a complaint in the light most favorable to the plaintiff. *Id*. When deciding a motion to dismiss, courts consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record. See *Schmidt v. Skolas*, 770 F.3d 241, 249 (2014)

108.    As a threshold matter, this is very well-pled and immediately survives the Motion to Dismiss.

109.    When accepted as true, the factual allegations in Ms. Langan's Complaint show a reasonable likelihood that discovery will reveal sufficient evidence to establish a prima facie case. She contends that (a) she was treated differently than her non-Caucasian counterparts, (b) she was treated the way she was treated due to her race, (c) she was discriminated against based on her disabilities as well as, having PTSD, (d) she was wrongfully terminated without one single piece of evidence brought to support the accusations made against her, and (e) this discriminatory treatment continued to last through November 16, 2021, as Defendant simply refused to acknowledge the fact that they had treated her disparately, without any evidence, and had made her suffer from substantial emotional distress.

110.    While Plaintiff Counsel argues that the existing standard in the 3rd Circuit is the "**motivating factor**" standard, the facts as alleged could infer that a discriminatory purpose was a *motivating factor* behind the challenged actions, or that the Defendant's acts or practices disproportionately burdened a protected class of which Ms. Langan is a member, so as to cause a disparate impact. See *Wilson v. Hillsborough Twp. Constr. Dep't*, 779 F. App'x 969, 972 (2019);

See *Rosado v. Whitcraft*, 2023 U.S. Dist. LEXIS 224332 (2023). No matter what standard you apply, whether it is a "motivating factor" standard or the "but-for" standard, both tests are readily met in this case.

111.    Notably, the Verified Complaint is clear concerning the "but-for" points. "But-for" plaintiff being Caucasian, she would otherwise not have been disparately treated like she was. The Verified Complaint points to 3 comparators, Garret McCloud (Compl ¶ 73), Leo Rivera (Compl. ¶ 74), and Jessica Ardita (Compl. ¶75). As stated in the Complaint, if Ms. Langan received only a tiny bit of the treatment Mr. McCloud, Mr. River, or Ms. Ardita received, she would have fared far better and may have still been employed with Starbucks. For Ms. Langan, there was no investigation, no proof ever provided, no evidence, no opportunity to defend herself, and absolutely no consideration for her situation as a single mother of three (3) children living with PTSD. Thus, "but-for" her race, she would have never suffered this attack. See *Wright-Phillips v. United Airlines, Inc.*, 2021 WL 1221111 (2021)

112.    Accordingly, as all the prima facie elements were met, Ms. Langan has stated a plausible claim for discrimination.

**CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully requests that this Court deny the Defendant's Motion to Dismiss in its entirety and permit this matter to proceed to discovery without further delay.

Respectfully Submitted,

Dated:   Astoria, New York
          January 28, 2024                          _____
                                                    Vincent Miletti, Esq.
                                                    MILETTI LAW P.C.
                                                    10 Halletts Point, Suite 1742

Astoria, New York 11102
609-353-6287 (Office)
VMiletti@Milettilaw.com (Email)
*Attorney for Plaintiff*

To    Carmen J. DiMaria, Esq.
Jocelyn A. Merced, Esq.
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Attorneys for Defendant
10 Madison Avenue, Suite 400
Morristown, New Jersey 07960
Telephone: (973) 656-1600
Facsimile: (973) 656-1611
*Attorney for Defendants*

## **RULE 7.2 CERTIFICATION**

Pursuant to Rule 7.2, Affidavits & Briefs, of the Local Civil & Criminal Rules of the United States District Court for the District of New Jersey, I hereby certify that the total number of pages in this Brief, excluding the table of contents and authorities, and this Certification, does not exceed 30 pages, as the font used is 12-point proportional.

_____
  VINCENT MILETTI, ESQ.

## <u>CERTIFICATE OF SERVICE IN PACER SYSTEM</u>

I certify that this document is being filed through the Public Access to Court Electronic Records ("PACER") system, which serves counsel, and other parties who are registered participants as identified on the system, via electronic copies of any and all matters submitted through the system. As such, an electronic copy of the foregoing was sent to all registered participants via PACER through their delivery service. Any counsel for other parties, or for any parties who are not registered participants, are being served by first class mail on the same date of electronic filing.

_____

Vincent Miletti, Esq.