<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **DANIELLE LANGAN,**<br><br>    Plaintiff,<br><br>    v.<br><br>**STARBUCKS CORPORATION D/B/A**<br>**STARBUCKS COFFEE COMPANY,**<br><br>    Defendant. | Civil Action No. 23-5056 (ZNQ) (TJB)<br><br>**OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon the Motion to Dismiss the Complaint (the "Motion," ECF No. 14) filed by Defendant Starbucks Corporation ("Starbucks" or "Defendant"). Defendant filed a brief in support of the Motion ("Moving Br.," ECF No. 14-1). Plaintiff Danielle Langan ("Plaintiff") filed an opposition brief ("Opp'n Br.," ECF No. 17) as well as the Declarations of Vincent Miletti, Esq. ("Miletti Decl.," ECF No. 17-1) and Danielle Langan ("Langan Decl.," ECF No. 17-2). Defendant filed a reply brief. ("Reply Br.," ECF No. 18). After careful consideration of the parties' submissions, the Court decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1] For the reasons outlined below, the Court will **GRANT** Defendant's Motion to Dismiss.

---

[1] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

1

## I.    BACKGROUND AND PROCEDURAL HISTORY[2]

Starting in November 2000, Plaintiff worked for Starbucks for over twenty years. ("Verified Complaint" or "VC," ECF No 1 ¶ 1.) During her employment, Plaintiff enjoyed several promotions and accolades, and received employee awards. (*Id.*) Plaintiff alleges that, despite her long and otherwise successful career with Starbucks, the company wrongly accused her of racism during the COVID-19 pandemic, culminating in a campaign to target, ostracize, and "trash" her within the company. (*Id.* ¶¶ 2–8.)

In March 2020, Starbucks experienced global shutdowns in the wake of COVID-19, resulting in uncertainty and difficult store operations. (*Id.* ¶ 38.) Plaintiff, as the Store Manager of Defendant's North Brunswick, New Jersey location, contacted Jennifer Pivarnik, the Regional Director of Operations, to express concerns about the store's working conditions. (*Id.* ¶¶ 29, 38.) Two days later, Plaintiff spoke with Ms. Pivarnik in person about the issue but was not provided with any solutions. (*Id.* ¶ 38.) By the end of March 2020, Plaintiff's store, like numerous others, shut down due to the pandemic. (*Id.* ¶¶ 37, 39.)

Around that same time, Starbucks began a Black Lives Matter ("BLM") campaign, allegedly to "correct their past historical wrongs against minorities" following a class action lawsuit that settled with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶¶ 4, 39.) The company ordered BLM shirts for its employees to wear during work. (*Id.* ¶ 39.) When the shirts were delivered to Plaintiff's store, they got sent back because no one was there to sign for and accept the package, as the store was shut down. (*Id.* ¶ 40.) Plaintiff was blamed for Defendant's improper delivery of the shirts and accused of intentionally sending back the package. (*Id.* ¶¶ 2, 40.) A shift supervisor at Plaintiff's store used her own funds to make similar shirts for

---

[2] For the purpose of considering the instant Motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

herself and her coworkers, but did not offer one to Plaintiff. (*Id.* ¶ 41.) Upon inquiry, the Assistant Store Manager, Devon Bascunan, informed Plaintiff that she did not receive a shirt because they believed that she is racist and does not support BLM. (*Id.*) Plaintiff maintains that she never indicated political preferences and denies allegations of racism, but she did not think the shirts were a good idea because customers who did not support BLM directed their frustration at Starbucks employees. (*Id.* ¶¶ 41–43.)

In October 2020, Plaintiff was informed that the Starbucks Ethics and Compliance team was beginning to investigate her. (*Id.* ¶ 44.) This exacerbated Plaintiff's anxiety and negatively affected her.[3] (*Id.*) From that point forward, Plaintiff's District Manager, Vaughn Clement, distanced himself from Plaintiff. (*Id.* ¶¶ 29, 44.) Mr. Clement started to communicate with only Mr. Bascunen about store issues or concerns arising from the North Brunswick location. (*Id.* ¶ 44.) Mr. Bascunen was then promoted to a Store Manager role at a different location in November 2020, and Plaintiff's concerns about needing a new assistant manager in North Brunswick to replace Mr. Bascunen fell on deaf ears. (*Id.* ¶ 45.) Plaintiff later contracted a severe case of COVID-19, and went on sick leave for a month. (*Id.* ¶ 47.) During that time, Mr. Clement transitioned many of Plaintiff's duties to Mr. Bascunen at the North Brunswick location. (*Id.*) Additionally, while Plaintiff was on leave, Mr. Bascunen improperly disclosed to employees at Plaintiff's store that she had COVID-19, allegedly with the intent to shame Plaintiff. (*Id.* ¶¶ 48–49.) On January 21, 2021, Plaintiff told a Starbucks Human Resources Generalist that she felt like she was being attacked by multiple employees, and that four in particular "were out to get her fired." (*Id.* ¶ 50.) The company's response was to focus on "getting rid of [Plaintiff] at all costs," and Plaintiff was terminated on February 4, 2021. (*Id.* ¶¶ 50–52.)

---

[3] Plaintiff was diagnosed with depression and anxiety disorder in 2007, and suffers from PTSD. (VC ¶¶ 6, 35.)

Until Plaintiff's termination, Starbucks had never informed Plaintiff about any allegedly poor conduct on her part. (*Id.* ¶¶ 46, 52.) Plaintiff discovered through a Notice of Separation that the Ethics and Compliance team made several findings following their investigation about Plaintiff's poor leadership, judgment, and behavior that violated the company's Anti-Harassment Standard. (*Id.* ¶ 52.) At an Unemployment Hearing on July 9, 2021, Plaintiff was further informed that she was alleged to have made discriminatory comments, including saying the N-word, that were "far too egregious," resulting in her termination. (*Id.* ¶¶ 56, 61–63.) Plaintiff denies having made such statements. (*Id.* ¶ 64.) She followed the only appellate procedure available to her by sending text messages to her boss as well as Ms. Pivarnik the day after she was terminated, but was ultimately advised that her termination was proper. (*Id.* ¶¶ 57–59.) Following Plaintiff's termination, her role in the North Brunswick location was replaced by Mr. Bascunen, a 28-year-old Hispanic male. (*Id.* ¶¶ 47, 67.) Plaintiff maintains that Starbucks does not treat similarly situated employees with the same kind of punishment. (*Id.* ¶¶ 72–76.)

Around July 26, 2021, Plaintiff filed a Charge of Discrimination ("Charge") with the New Jersey Office of the Attorney General, Division of Civil Rights ("NJDCR") and the EEOC. (*Id.* ¶ 24.) She received a Notice of Right to Sue for her Charge around July 21, 2023. (*Id.* ¶ 25.) On August 18, 2023, Plaintiff filed an eleven-count Verified Complaint against Starbucks in this Court, alleging: race discrimination under Title VII of the Civil Rights Act ("Title VII") (Count One), 42 U.S.C. § 1981 (Count Two), and the New Jersey Law Against Discrimination ("NJLAD") (Count Three); retaliation under Title VII (Count Four) and NJLAD (Count Five)[4]; discrimination under the Americans with Disabilities Act ("ADA") (Count Six), NJLAD (Count Seven), and the Age Discrimination in Employment Act ("ADEA") (Count Eight); and common law tort claims of

---

[4] Plaintiff erroneously refers to her fifth-listed cause of action as a "ninth cause of action." Given that it is situated between Counts Four and Six, the Court will refer to Plaintiff's retaliation claim under NJLAD as "Count Five."

Intentional Infliction of Emotional Distress ("IIED") (Count Nine), Negligent Infliction of Emotional Distress ("NIED") (Count Ten), and "negligent retention, supervision, and hiring" (Count Eleven). Defendant's Motion to Dismiss challenges the sufficiency of Counts Three, Five, and Seven (the "NJLAD Claims"), Counts Nine through Eleven (the "Tort Claims"), and Count Two, the § 1981 claim.

## II.    JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1332.

## III.   LEGAL STANDARD

### A.    Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are

sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV.   **DISCUSSION**

### A.   **NJLAD Claims (Counts Three, Five, and Seven)**

Defendant argues that the NJLAD Claims should be dismissed because they are barred by the applicable two-year statute of limitations. (Moving Br. at 5–6.) Plaintiff asserts that her NJLAD Claims are timely because the last allegedly discriminatory act occurred in November 2021, and Plaintiff filed her Complaint in August 2023, less than two years later. (Opp'n Br. at 11.)[5] Plaintiff maintains that equitable tolling applies to this lawsuit in any event because she should not be responsible for any inadvertent delay with the NJDCR's handling of her case after she filed her Charge in July 2021. (*Id.* at 11–14.)

The statute of limitations for NJLAD claims is two years. *Galm v. Gloucester County College*, Civ. No. 06-3333, 2007 WL 2442343, at *4 (D.N.J. Aug. 22, 2007). To determine if Plaintiff's NJLAD Claims are timely, the Court must first determine when the statute of limitations began to run. Defendant insists it began when Plaintiff was terminated from Starbucks on February 4, 2021, and Plaintiff insists it began in November 2021 when Starbucks filed an appeal of Plaintiff's successful application for unemployment insurance benefits with the New Jersey Department of Labor ("NJDOL"). (Opp'n Br. at 11; Reply Br. at 3–5.)

---

[5] The Court refers to the page numbers of Plaintiff's Opposition Brief that are generated by the CM/ECF system.

Accepting Plaintiff's argument would require the Court to apply the continuing violations doctrine, which is "an equitable exception" to the statute of limitations. *Shepherd v. Hunterdon Developmental Ctr.*, 803 A.2d 611, 614 (N.J. 2002). The doctrine applies when a defendant's conduct is "part of a pattern and at least one of those acts occurred within the statutory limitations period." *Id.* Under New Jersey law, which follows the Third Circuit's lead, termination from employment is typically considered a "discrete" act that triggers the statute of limitations, rather than part of a continuing violation. *Bolinger v. Bell Atl.*, 749 A.2d 857, 861–62 (N.J. 2000); *Anyawu v. BJ's Wholesale Club, Inc.*, Civ. No. 8-6319, 2009 WL 2496537, at *3–5 (D.N.J. Aug. 10, 2009) (analyzing New Jersey law); *Shepherd*, 803 A.2d at 623 (federal law is "merely a guide" when analyzing state law employment discrimination claims). Nonetheless, to determine whether to apply the continuing violations doctrine, the Court must consider: "(1) Subject matter: whether all of the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation; (2) Frequency: whether the alleged acts are either recurring or discrete acts— the acts alleged must be at least of a substantially similar nature; and (3) Degree of permanence: whether the act has the degree of permanence which would trigger an employee's awareness of and duty to assert his or her rights."[6] *Anyawu*, 2009 WL 2496537, at *3 (citing New Jersey law) (internal quotation marks omitted); *Shepherd*, 803 A.2d at 623–25.

Here, the Court finds that the factors weigh against applying the continuing violations doctrine. First, Defendant's appeal of Plaintiff's unemployment insurance benefits is unrelated to

---

[6] Although federal law in this area has explicitly relinquished the third requirement of permanency, *see Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 166 (3d Cir. 2013), the New Jersey Supreme Court has not done so. *See Shepherd*, 803 A.2d at 624 (applying *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), and interpreting it "as holding that a [plaintiff's] knowledge of a claim is insufficient to start the limitations clock so long as the defendant continues the series of non-discrete acts on which the claim as a whole is based"—but not as requiring relinquishment of the permanency requirement).

Plaintiff's termination.[7] *See Anyawu*, 2009 WL 2496537, at *5 (refusing to apply continuing

violations doctrine to retaliation claim because alleged discriminatory misconduct that led to

termination and subsequent denial of unemployment benefits were not "sufficiently related to

establish a recurring pattern of behavior"). Moreover, any "continuing violations" since Plaintiff's

termination—illustrated by the sole act of Defendant's NJDOL appeal—clearly do not occur with

frequency or establish a degree of permanence. Therefore, the Court finds that the statute of

limitations expired on February 5, 2023, two years after Plaintiff's termination.

Plaintiff's NJLAD Claims are untimely unless equitable tolling applies.

> New Jersey law permits equitable tolling where [1] the complainant
> has been induced or tricked by his adversary's misconduct into
> allowing the filing deadline to pass, or [2] where a plaintiff has in
> some extraordinary way been prevented from asserting his rights, or
> [3] where a plaintiff has timely asserted his rights mistakenly by
> either defective pleading or in the wrong forum.

*Kates v. Bridgeton Police Dep't*, Civ. No. 10-6386, 2011 WL 6720497, at *9–10 (D.N.J. Dec. 21,

2011) (citing *Freeman v. State*, 788 A.2d 867, 879–80 (N.J. Super. App. Div. 2002) (internal

quotation marks omitted)). Relying on additional facts portrayed in the Langan and Miletti

Declarations and the attachments thereto, Plaintiff insists that she was diligent in pursuing her

claims, and that the NJDCR is to blame for her failure to timely file this lawsuit. (Opp'n Br. at

11–17.) However, the Court at this stage may not consider evidence outside of the Verified

Complaint unless it is either intrinsic to or explicitly relied on in the Verified Complaint.[8] *Schmidt*

---

[7] Notably, Plaintiff presents no facts or case law to support her contention that Defendant's appeal of the NJDOL's unemployment insurance decision was related to the prior acts of discriminatory misconduct leading up to and including her termination so as to extend the statute of limitations. (*See* Opp'n Br. at 11.)

[8] The Court notes that although a statute of limitations argument is an affirmative defense that typically cannot be raised in a motion to dismiss, an exception exists when, as here, the pertinent dates as pled in the complaint suggest that there was a statute of limitations violation. *See Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978) (a statute of limitations issue that is apparent on the face of the complaint may form the basis of a dismissal under Rule 12(b)(6)). Moreover, this is not the case where both parties rely on facts outside of the complaint, requiring treatment of Defendant's Motion to Dismiss as a motion for summary judgment. *Cf. Komosa v. U.S. Postal Serv.*, 764 F. App'x 189, 191 (3d Cir. 2019). To the contrary, Defendant argues that the Verified Complaint on its face shows

*v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).   On the face of the Verified Complaint and its attachments, Plaintiff alleges that she filed her Charge with the NJDCR in July 2021, and received her Notice of Right to Sue two years later.   (VC ¶¶ 24–25.)   The act of filing a charge of discrimination with the NJDCR does not toll the statute of limitations for court claims.   *Cox v. Scholastic Book Fairs*, Civ. No. 05-4190, 2006 WL 1228615, at *3 (D.N.J. May 5, 2006).   Plaintiff had the choice of pursuing her discrimination claim either in court or before the NJDCR; she initially chose the latter and at any time had the option of withdrawing her Charge in order to instead pursue her claims in court.   *Id.*   The Verified Complaint is bereft of any allegations explaining why she waited until August 2023 in order to do so, including any extraordinary circumstances or misconduct by Defendant that induced or tricked her into tardiness.[9]   (*See generally* VC.)   The Court therefore finds that it cannot apply equitable tolling to Plaintiff's NJLAD Claims, and that it must dismiss those claims as untimely.[10]   The Court will dismiss the NJLAD Claims without prejudice to allow Plaintiff the opportunity to plead facts that might support her equitable tolling argument.

---

a statute of limitations violation that cannot be remedied by equitable tolling, and urges the Court to reject Plaintiff's additional documents.   (Reply Br. at 4–5.)

[9] The third situation that would warrant equitable tolling, a timely filing in the wrong forum, is also not alleged here. (*See generally* VC.)

[10] The cases Plaintiff relies on to support her equitable tolling argument are unpersuasive, as they all analyze factual scenarios that sufficiently support equitable tolling and that are distinguishable from the facts portrayed in Plaintiff's Verified Complaint.   (*See generally* VC); *Shaver v. Corry Hiebert Corp.*, 936 F. Supp. 313, 316–18 (W.D. Pa. 1996) (plaintiff relied on agency representations while not represented by counsel and otherwise did timely file a charge); *Altopiedi v. Memorex Telex Corp.*, 834 F. Supp. 800, 807 (E.D. Pa. 1993) (plaintiff successfully asserted extraordinary circumstances because of bureaucratic delay).   Additionally, the Court finds that *Anderson*, an Eighth Circuit decision also relied on by Plaintiff, is unpersuasive.   *See Anderson v. Unisys Corp.*, 47 F.3d 302, 306–09 (8th Cir. 1995).

### B.  Tort Claims (Counts Nine through Eleven)

#### 1.  IIED and NIED

As an initial matter, Plaintiff clarifies in her Opposition Brief that she did not intend to file an NIED claim and does not oppose its dismissal. (Opp'n Br. at 17.) The Court will therefore dismiss Count Ten, Plaintiff's NIED claim.

Defendant argues for dismissal of Count Nine, Plaintiff's IIED claim, for several reasons, but first and foremost because it is barred by the applicable two-year statute of limitations. (Moving Br. at 6–10.) Plaintiff again asserts that her claim was timely filed because the statute of limitations did not begin to run until November 2021 or, alternatively, because of equitable tolling. (Opp'n Br. at 18.) The statute of limitations for IIED claims is two years. *Webster v. Dolgencorp, LLC*, Civ. No. 13-690, 2013 WL 4501461, at *6 (D.N.J. Aug. 22, 2013). For the reasons stated above with respect to Plaintiff's NJLAD Claims, the Court finds that Plaintiff's IIED claim is also time-barred, and that it cannot apply either equitable tolling or the continuing violations doctrine to remedy the situation based on the facts as pled in the Verified Complaint. The Court will therefore dismiss Count Nine without prejudice.

#### 2.  Negligent Retention, Supervision, and Hiring

Defendant argues that the last of Plaintiff's Tort Claims, Count Eleven for negligent retention, supervision, and hiring, should be dismissed because the Verified Complaint fails to identify who Starbucks believes was unfit, incompetent, and negligently hired, and fails to allege that Starbucks knew or should have known of such incompetence. (Moving Br. at 12.) Plaintiff argues that her claim is sufficiently pled because, citing Mr. Clement as an example, Starbucks "had reason to know of their employee's unfitness." (Opp'n Br. at 28.) Plaintiff adds that discovery is ultimately required to show whether or not she can prove her negligent retention,

supervision, and hiring claim, an inquiry that is premature at the motion to dismiss stage. (*Id.* at 29.)

To state a claim for negligent retention, supervision, and hiring, a plaintiff must allege: (1) an employer knew or had reason to know of particular dangerous attributes, unfitness, or incompetence of an employee; (2) the employer could reasonably have foreseen that the employee's qualities created a risk of harm to others; and (3) through the employer's negligence in hiring the employee, the employee's incompetence, unfitness, or dangerous characteristics proximately caused an injury. *Grieco v. Lanigan*, Civ. No. 15-7881, 2017 WL 384689, at *5 (D.N.J. Jan. 27, 2017) (discussing law derived from *Di Cosala v. Kay*, 450 A.2d 508, 516 (N.J. 1982)). Here, the Court finds that the Verified Complaint fails to identify any Starbucks employees who possess dangerous attributes or are unfit or incompetent for the job, including who those specific employees are and which of the applicable negative attributes they possess. (*See generally* VC.) Moreover, the Verified Complaint fails to identify any risk of harm posed by any Starbucks employees, let alone a foreseeable risk of harm or knowledge by Starbucks of the negative qualities. (*See generally id.*) The Court will therefore dismiss Count Eleven as inadequately pled, but without prejudice. *See Walker v. City of Newark*, Civ. No. 19-16853, 2020 WL 3542502, at *15–17 (D.N.J. June 30, 2020) (dismissal of negligent hiring and supervision claim because complaint lacked "any facts to suggest that [the defendant] had reason to know that any of the specific [employees] were particularly unfit, incompetent, or dangerous"); *Grieco*, 2017 WL 384689, at *5 (same).

### C.     Violation of 42 U.S.C. § 1981 (Count Two)

Lastly, Defendant argues that Plaintiff's allegations are "wholly insufficient" to maintain a claim for violation of 42 U.S.C. § 1981. (Moving Br. at 13.) Plaintiff argues that she sufficiently

alleges that she was treated differently than her non-Caucasian counterparts due to her race and wrongfully terminated on that basis. (Opp'n Br. at 32.) Section 1981 prohibits racial discrimination and provides, in relevant part, that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other.

42 U.S.C. § 1981. To state a claim under § 1981, a plaintiff must allege that 1) she was qualified for her employment position, 2) she suffered from an adverse employment action, 3) under circumstances that would give rise to an inference of intentional discrimination. *Mieczkowski v. York City School Dist.*, 414 F. App'x 441, 444, 445 n.2 (3d Cir. 2011) (Title VII and § 1981 have identical elements); *Iadimarco v. Runyon*, 190 F.3d 151, 157–58 (3d Cir. 1999) (membership of a minority group is no longer a requirement for cases of reverse race discrimination). Here, the Court finds that Plaintiff's allegations are insufficient to state a plausible claim. Although the facts as pled in the Verified Complaint support that Plaintiff was qualified for her position of Store Manager, there are insufficient allegations—beyond Plaintiff's own conclusory speculations—to support an inference of intentional discrimination by Starbucks. (VC ¶¶ 1, 52; *see generally id.*); *Sharifi v. Twp. of East Windsor*, Civ. No. 21-18097, 2023 WL 2182003, at *7 (D.N.J. Feb. 23, 2023) ("Plaintiff cannot survive a motion to dismiss based on broad, conclusory allegations, unsupported by specific facts."). To the contrary, the Verified Complaint makes clear that Starbucks terminated Plaintiff's employment, following an investigation and hearing, because the company found that she made discriminatory comments that were "far too egregious" and that she violated the company's Anti-Harassment Standard. (*Id.* ¶¶ 52, 56, 61–63.) The Court will

therefore dismiss Count Two for failure to state a plausible claim, without prejudice. *See Smart v. Twp. of Winslow*, Civ. No. 13-4690, 2015 WL 5455643, at *3 (D.N.J. Sep. 16, 2015) (dismissing Section 1981 claim because no allegations supported claim that the defendant's conduct was motivated by racial discrimination).

## IV. <u>CONCLUSION</u>

For the reasons stated above, the Court will **GRANT** Defendant's Motion to Dismiss and Counts Two, Three, Five, Seven, Nine, Ten, and Eleven will be dismissed without prejudice. Plaintiff will be given an opportunity to file an Amended Complaint to address the defects identified in this Opinion within 30 days. An appropriate Order will follow.

Date: **July 30, 2024**

ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE