<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DANIELLE LANGAN**,<br><br>Plaintiff,<br><br>v.<br><br>**STARBUCKS CORPORATION D/B/A STARBUCKS COFFEE COMPANY**,<br><br>Defendant. | Civil Action No. 23-5056 (ZNQ) (JTQ)<br><br>**OPINION** |

<u>**QURAISHI, District Judge**</u>

      **THIS MATTER** comes before the Court upon a Motion to Dismiss the Amended Complaint filed by Defendant Starbucks Corporation ("Defendant" or "Starbucks"). ("Motion," ECF No. 26.) Defendant filed a Moving Brief in support of the Motion. ("Moving Br.," ECF No. 26-1.) Plaintiff Danielle Langan ("Plaintiff" or "Langan") filed an Opposition Brief ("Opp'n Br.," ECF No. 27) and various exhibits (ECF Nos. 27-5 through -20). Defendant filed a Reply Brief. ("Reply Br.," ECF No. 31.) After careful consideration of the parties' submissions, the Court decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1] For the reasons outlined below, the Court will **GRANT** the Motion.

---

[1] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

I.  **BACKGROUND AND PROCEDURAL HISTORY**[2]

The Court assumes the parties' familiarity with the underlying facts and procedural history and only recites those facts necessary to decide the instant motion. For a comprehensive review of the factual and procedural history, reference is made to the Court's prior decision, *Langan v. Starbucks Corp.*, Civ. No. 23-5056, 2024 WL 3580760, at *1 (D.N.J. July 30, 2024). ("Opinion," ECF No. 19.) As the Court summarized in that decision,

> Plaintiff[, a forty-six-year-old female] worked for Starbucks for over twenty years. . . . Plaintiff alleges that, despite her long and otherwise successful career with Starbucks, the company wrongly accused her of racism during the COVID-19 pandemic, culminating in a campaign to target, ostracize, and "trash" her within the company. . . . Around [the end of March 2020], Starbucks began a Black Lives Matter ("BLM") campaign, allegedly to "correct their past historical wrongs against minorities" following a class action lawsuit that settled with the Equal Employment Opportunity Commission ("EEOC")." [Starbucks] ordered BLM shirts for its employees to wear during work. When the shirts were delivered to Plaintiff's store, they got sent back because no one was there to sign for and accept the package, as the store was shut down. Plaintiff was [allegedly] blamed for Defendant's improper delivery of the shirts and accused of intentionally sending back the package. . . . On January 21, 2021, Plaintiff told a Starbucks Human Resources Generalist that she felt like she was being attacked by multiple employees, and that four in particular "were out to get her fired." The company's response was to focus on "getting rid of [Plaintiff] at all costs," and Plaintiff was terminated on February 4, 2021. . . . At an Unemployment Hearing on July 9, 2021, Plaintiff was [] informed that she was alleged to have made discriminatory comments, including saying the N-word, that were "far too egregious," resulting in her termination. Plaintiff denies having made such statements. . . . Following Plaintiff's termination, her role in the North Brunswick location was replaced by Mr. Bascunen, a 28-year-old Hispanic male.

*Id.* at *1–2 (citations omitted).

---

[2] For the purpose of considering the instant Motion, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

In its previous decision, the Court dismissed Counts Two (racial discrimination brought pursuant to 42 U.S.C. § 1981), Three (racial discrimination under the New Jersey Law Against Discrimination ("NJLAD")), Five (retaliation under the NJLAD), Seven (discrimination under the NJLAD), Nine (intentional infliction of emotional distress ("IIED")), Ten (negligent infliction of emotional distress), and Eleven (negligent retention, supervision, and hiring) without prejudice. The Court found that the statute of limitations barred Plaintiff's NJLAD claims because the "factors weigh[ed] against applying the continuing violations doctrine," and equitable tolling, based on the allegations in the Complaint, did not apply. *Id.* at *4. The Court also dismissed Plaintiff's tort claims because the statute of limitations for such claims expired. *Id.* at *5.[3] Finally, as to the Section 1981 claim (Count Two), the Court found that Plaintiff's conclusory allegations did not plausibly plead an inference of intentional discrimination by Starbucks. *Id.* at *6.

In the Amended Complaint, Plaintiff asserts ten causes of action: racial discrimination in violation of Title VIII of the Civil Rights Act (Count One); racial discrimination in violation of 42 U.S.C. § 1981 (Count Two); racial discrimination in violation of the NJLAD (Count Three); retaliation under Title VII (Count Four); retaliation under the NJLAD (Count Five); discrimination in violation of the Americans with Disabilities Act ("ADA") (Count Six); discrimination based on Plaintiff's disability in violation of the NJLAD (Count Seven); discrimination in violation of the Age Discrimination in Employment Act ("ADEA") (Count Eight); IIED (Count Nine); and negligent retention, supervision, and hiring (Count Ten). (*See generally* Am. Compl.)

Defendant filed the instant Motion on November 8, 2024, seeking to dismiss Plaintiff's racial discrimination claim in violation of 42 U.S.C. § 1981 (Count Two); the NJLAD claims (Counts Three, Five, and Seven), the IIED claim (Count Nine); and the claim for negligent

---

[3] The Court previously dismissed Plaintiff's NIED claim because, as explained in her initial opposition brief, she "did not intend to file an NIED claim and does not oppose its dismissal." *Id.*

3

retention, supervision, and hiring (Count Ten).  To be clear, Defendant does not seek to dismiss Counts One, Four, Six, and Eight.

## II.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1332.

## III.  LEGAL STANDARD

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6).  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).  Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).  A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663).  On a Rule 12(b)(6) motion, the "defendant bears the burden of showing

4

that no claim has been presented." *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV.   DISCUSSION

### A.   NJLAD Claims (Counts Three, Five, and Seven)

In the Motion, Defendant again seeks dismissal of Plaintiff's NJLAD claims as time-barred, and argues that the allegations in the Amended Complaint are insufficient to warrant application of the equitable tolling doctrine and the continuing violations doctrine. (Moving Br. at 4.) Thus, Defendant contends that Counts Three, Five, and Seven—those invoking the NJLAD—should be dismissed. (*Id.*)

The Court must first determine whether Plaintiff's NJLAD claims are barred by the applicable two-year statute of limitations before considering any exceptions.[4] *Galm v. Gloucester County College*, Civ. No. 06-3333, 2007 WL 2442343, at *4 (D.N.J. Aug. 22, 2007) ("The current statute of limitations for actions under NJLAD is two years."). That is relatively straightforward in this instance because the parties agree that the two-year statute of limitations for Plaintiff's NJLAD claims began on February 4, 2021, and expired on February 5, 2023. (Moving Br. at 5; Opp'n Br. at 10.)[5] Plaintiff filed her initial complaint on August 18, 2023, after the statute of limitations had expired. Therefore, the Court finds that the statute of limitations bars her NJLAD claims absent some exception. The Court next considers whether an exception applies.

---

[4] The Court notes that although a statute of limitations argument is an affirmative defense that typically cannot be raised in a motion to dismiss, an exception exists when, as here, the pertinent dates as pled in the complaint suggest that there is a statute of limitations violation. *See Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978) (a statute of limitations issue that is apparent on the face of the complaint may form the basis of a dismissal under Rule 12(b)(6)). Moreover, this is not the case where both parties rely on facts outside of the complaint, requiring treatment of Defendant's Motion to Dismiss as a motion for summary judgment. *Cf. Komosa v. U.S. Postal Serv.*, 764 F. App'x 189, 191 (3d Cir. 2019).

[5] The Court refers to the page numbers of Plaintiff's Opposition Brief that are generated by the CM/ECF system because Plaintiff's brief does not include internal page numbers.

5

### 1. Continuing Violations Doctrine

Relevant here, one "equitable exception" to the statute of limitations is the continuing violations doctrine. *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (3d Cir. 2014); *Shepherd v. Hunterdon Developmental Ctr.*, 803 A.2d 611, 614 (N.J. 2002). The doctrine applies when a defendant's conduct is "part of a pattern and at least one of those acts occurred within the statutory limitations period." *Id.* As the Court noted in its previous decision, under New Jersey law, termination from employment is typically considered a "discrete" act that triggers the statute of limitations, rather than part of a continuing violation. *Bolinger v. Bell Atl.*, 749 A.2d 857, 861–62 (N.J. 2000); *Anyawu v. BJ's Wholesale Club, Inc.*, Civ. No. 08-6319, 2009 WL 2496537, at *3–5 (D.N.J. Aug. 10, 2009) (analyzing New Jersey law); *Shepherd*, 803 A.2d at 623 (federal law is "merely a guide" when analyzing state law employment discrimination claims).

To determine whether to apply the continuing violations doctrine, the Court must consider: "(1) Subject matter: whether all of the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation; (2) Frequency: whether the alleged acts are either recurring or discrete acts—the acts alleged must be at least of a substantially similar nature; and (3) Degree of permanence: whether the act has the degree of permanence which would trigger an employee's awareness of and duty to assert his or her rights."[6] *Anyawu*, 2009 WL 2496537, at *3 (citing New Jersey law) (internal quotation marks omitted); *Shepherd*, 803 A.2d at 623–25.

---

[6] Although federal law in this area has explicitly relinquished the third requirement of permanency, *see Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 166 (3d Cir. 2013), the New Jersey Supreme Court has not done so. *See Shepherd*, 803 A.2d at 624 (applying *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (reading *Morgan* as "holding that a [plaintiff's] knowledge of a claim is insufficient to start the limitations clock so long as the defendant continues the series of non-discrete acts on which the claim as a whole is based"—but not as requiring relinquishment of the permanency requirement).

Defendant argues that there is no continuing violation because its opposition to Plaintiff's claim for unemployment insurance benefits is unrelated to her NJLAD claims. (Reply Br. at 3, 8.) Plaintiff maintains that an employer's opposition to a claim for unemployment compensation can constitute post-employment retaliation. (Opp'n Br. at 32.) She believes she has adequately pled post-employment retaliation because her unemployment benefits were opposed less than six months after her termination and the opposition of her unemployment benefits is a discrete act. (*Id.* at 33–34.) Therefore, according to Plaintiff, the opposition to her unemployment benefits was a retaliatory action, and is thus connected to her claim of discrimination. (*Id.* at 33.)

The Court previously rejected Plaintiff's argument that the denial of Plaintiff's unemployment benefits was related to her termination, in part, because "Plaintiff present[ed] no facts or case law to support her contention that Defendant's appeal of the [New Jersey Department of Labor and Workforce Development's ("NJDOL")] unemployment insurance decision was related to the prior acts of discriminatory misconduct leading up to and including her termination so as to extend the statute of limitations." *Langan*, 2024 WL 3580760, at *4, n.4. Here, the Amended Complaint contains a section with allegations related to disability discrimination, including allegations attempting to connect the denial of Plaintiff's unemployment benefits to Starbucks' alleged discrimination. (*See generally* Am. Comp. ¶¶ 113–126.) The question is whether these allegations are sufficient for the Court to apply the continuing violations doctrine.

To support use of the continuing violations doctrine, Plaintiff alleges that she has a history of mental health issues and that "Defendants failed to even so much as engage in the interactive process." (*Id.* ¶ 126.) Plaintiff alleges that "in retaliation" for her medical condition, "she was subjected to post-employment retaliation as Starbucks continues to challenge and obstruct her unemployment benefits for no reason other than to discriminate against her." (*Id.* ¶ 129; *see also*

7

*id.* ¶¶ 178, 189.) Plaintiff adds that there is an "incentive to rid [Starbucks] of an older employee who suffers from disabilities driving their health insurance costs and premium up." (*Id.* ¶ 133.)

Taking these allegations as true, the Court again finds that the factors for applying the continuing violations doctrine still weigh against applying the doctrine. First, Plaintiff fails to allege new facts in a non-conclusory manner to support an inference that Defendant's appeal and opposition of Plaintiff's unemployment insurance benefits are sufficiently related to Plaintiff's termination. *See Anyawu*, 2009 WL 2496537, at *5 (refusing to apply the continuing violations doctrine to a retaliation claim because the alleged discriminatory misconduct that led to the plaintiff's termination and subsequent denial of unemployment benefits were not "sufficiently related to establish a recurring pattern of behavior"). Additionally, the Court finds, based on the allegations in the Amended Complaint, that the purported "continuing violation"—the NJDCR's appeal and opposition to Plaintiff's unemployment benefits—is not a continuing violation because it is not a separate act that collectively constitutes one unlawful employment practice. *Roa v. Roa*, 985 A.2d 1225, 1231 (N.J. 2010).

Moreover, any "continuing violation" since Plaintiff's termination—illustrated by Defendant's NJDOL appeal or alleged obstruction of Plaintiff's unemployment benefits—does not occur with frequency or establish a degree of permanence, for purposes of the continuing violation doctrine. It appears from the allegations that opposition to Plaintiff's unemployment benefits was a "continuing effect" of a prior violation, not a "continuing violation." *All. for Disabled In Action, Inc. v. Renaissance Enters., Inc.*, 853 A.2d 334, 341 (N.J. App. Div. 2004), *aff'd,* 886 A.2d 629 (N.J. 2005). In short, the allegations attempting to make a connection between the NJDOL's denial and Defendant's opposition to Plaintiff's unemployment benefits, even when taken as true, are conclusory and do not adequately support a substantial connection of discrimination to her

8

termination under the continuing violations doctrine. Therefore, the Court finds the continuing violations doctrine inapplicable. Accordingly, the statute of limitations for Plaintiff's NJLAD claims expired on February 5, 2023, two years after Plaintiff's termination.

### 2. Equitable Tolling

Equitable tolling is another exception to claims being barred by the statute of limitations. As before, Defendant contends that equitable tolling is inapplicable because Plaintiff could have withdrawn her NJDCR claim and filed a civil complaint within the two-year statute of limitations. (Moving Br. at 9.) Plaintiff argues that equitable tolling makes her NJLAD claims timely because her timeliness issues are a result of NJDCR's delays and miscommunications. ("Opp'n Br. at 14.) Plaintiff argues in the alternative that the Court may reserve the right to revisit equitable tolling after full discovery. (*Id.* at 17–18.)

In its prior decision, the Court held that the Complaint was "bereft of any allegations explaining why [Plaintiff] waited until August 2023 [to withdraw her NJDCR charge], including any extraordinary circumstances or misconduct by Defendant that induced or tricked her into tardiness." *Langan*, 2024 WL 3580760, at *4. For reasons to be shown, the Court again finds that the Amended Complaint contains insufficient allegations for the Court to equitably toll the statute of limitations for Plaintiff's NJLAD claims.

New Jersey law permits equitable tolling

> where [1] the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass, or [2] where a plaintiff has in some extraordinary way been prevented from asserting his rights, or [3] where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum.

*Kates v. Bridgeton Police Dep't*, Civ. No. 10-6386, 2011 WL 6720497, at *9–10 (D.N.J. Dec. 21, 2011) (citing *Freeman v. State of N.J.*, 788 A.2d 867, 879–80 (N.J. Super. App. Div. 2002) (internal

quotation marks omitted). Equitable tolling is a "rare remedy to be applied in unusual circumstances." *Wallace v. Kato*, 549 U.S. 384, 396 (2007). Equitable tolling should be applied sparingly, with the burden on the plaintiff to demonstrate that the application is warranted; excusable neglect is not acceptable to obtain relief. *Taylor v. Comput. Scis. Corp.*, Civ. No. 20-1848, 2022 WL 2046887 at *2 (D.N.J. June 6, 2022). Importantly, filing a charge of discrimination with the NJDCR does not toll the statute of limitations for court claims. *Cox v. Scholastic Book Fairs*, Civ. No. 05-4190, 2006 WL 1228615, at *3 (D.N.J. May 5, 2006). Here, Plaintiff had the choice of pursuing her discrimination claim either in court or before the NJDCR; she initially chose the latter but retained the right to withdraw her charge at any time to instead pursue her claims in court.

As alleged, Plaintiff filed her charge with the NJDCR in July 2021, and received her Notice of Right to Sue approximately two years later. (Am. Compl. ¶¶ 26, 52). Unlike the initial Complaint, the Amended Complaint contains several allegations demonstrating the NJDCR's purported failure to move Plaintiff's case, to her detriment. Plaintiff alleges that in January 2022, Plaintiff reached out to the NJDCR, noting that the "case has gone cold" and that Plaintiff has been unsuccessful at reaching anyone from the NJDCR. (*Id.* ¶ 31; Ex. D, ECF No. 27-8.) Following emails from Plaintiff's Counsel, the NJDCR filed a Verified Complaint and Starbucks filed an Answer. (Am. Compl. ¶¶ 33, 34, 35.) The Amended Complaint then asserts that the matter was reassigned to investigator Darrell Booker ("Booker") in May 2022, who did not respond substantively to Plaintiff until September 14, 2022. (*Id.* ¶¶ 36–45.) Plaintiff further alleges that after Booker asked if "he should send a demand to opposing counsel prior to a formal request to move the case to the [NJDCR] mediation unit," Booker "went cold, [and] ignored our emails and phone calls." (*Id.* ¶ 46.)

Despite these lengthy allegations, for the reasons set forth below, the Court finds that equitable tolling is inapplicable to Plaintiff's NJLAD claims. Although Plaintiff alleges that "there are at least 41 documented attempts by [] Plaintiff and Plaintiff['s] Counsel to move this case along with the NJDCR, and at least 23 attempts since October 25, 2022 to request a case closure," (Am. Compl. ¶ 56), Plaintiff could have withdrawn her NJDCR charge at any time to pursue her claims in court and did not need a case closure to pursue those claims. *Wolf v. PRD Mgmt. Inc.*, Civ. No. 11-2736, 2012 WL 1044504, at *3 (D.N.J. Mar. 27, 2012) (denying equitable tolling because "Plaintiff had the option to file her state law claims in court even as her EEOC claim was pending"). There is no requirement that a plaintiff seek an administrative remedy for an NJLAD claim before seeking a judicial remedy. *See Brown v. R.R. Grp. LLC.*, Civ. No. 16-4602, 2017 WL 1365215, at *2 (D.N.J. Apr. 7, 2017) (dismissing the plaintiff's NJLAD claims because he failed to withdraw his administrative charge before the expiration of the statute of limitations). The lengthy allegations pertaining to Plaintiff's delay in withdrawing her charge fail to articulate how Plaintiff has "in some extraordinary way been prevented from asserting h[er] rights," or that she was intentionally misled by the NJDCR. At best, the allegations demonstrate neglect by Booker that does not excuse Plaintiff's decision not to withdraw her charge. *See Kates*, 2011 WL 6720497, at *9–10; *Wolf*, 2012 WL 1044504, at *3 ("[A]bsent a showing of intentional inducement or trickery by the defendant, a statute of limitations should be tolled only in the *rare situation* where equitable tolling is demanded by sound legal principles as well as the interest of justice." (citing *U.S. v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998)).)

It is immaterial that Plaintiff's counsel closely monitored her NJDCR claim and that investigators and the NJDCR may have failed to diligently pursue Plaintiff's claim. That does not discharge Plaintiff's obligation to act to avoid being barred by the statute of limitations. *Taylor*,

11

2022 WL 2046887 at *5 (rejecting the plaintiff's argument that delays and confusion from the administrative process was the reason for her delay and not applying equitable tolling to the plaintiff's NJLAD claims).  Finally, as at least one court in this district has observed, permitting equitable tolling based on the allegations as pled here would improperly "allow a claimant to buy more time than the statute of limitations period provides."  *Cox*, 2006 WL 1228615, at *3.

Accordingly, the Court finds that equitable tolling does not apply to Plaintiff's NJLAD claims, and that they are time-barred.  Defendant's Motion will therefore be **GRANTED** as to Counts Three, Five, and Seven.  Those claims will be dismissed with prejudice.

      **B.**      **Tort Claims (Counts Nine and Ten)**

          **1.**      **Intentional Infliction of Emotional Distress ("IIED")**

Defendant seeks dismissal of Plaintiff's IIED claim with prejudice because her claim is barred by the statute of limitations. (Moving Br. at 10–11.)  Plaintiff maintains that the claim is not barred because of equitable tolling.  (Opp'n Br. at 19.)  The statute of limitations for IIED claims is two years, and the parties do not dispute that the IIED claim was filed beyond the two-year statute of limitations.  *Webster v. Dolgencorp, LLC*, Civ. No. 13-690, 2013 WL 4501461, at *6 (D.N.J. Aug. 22, 2013).  The parties contest, however, whether equitable tolling applies.  For the reasons stated above concerning Plaintiff's NJLAD claims, the continuing violations doctrine and equitable tolling do not apply to Plaintiff's IIED claim, and it is also time-barred.  Accordingly, Defendant's Motion will be **GRANTED** as to Count Nine, and Plaintiff's IIED claim will be dismissed with prejudice.

          **2.**      **Negligent Retention, Supervision, and Hiring**

Defendant argues that the allegations in the Amended Complaint are insufficient to maintain a claim for negligent retention, supervision, and hiring. (Moving Br. at 14–15.)  Plaintiff

argues that her negligent retention, supervision, and hiring claim is adequately pled because the facts indicate that Starbucks had ample reason to question Vaughn Clement's ("Clement")[7] fitness. (Opp'n Br. at 28.)

In the Amended Complaint, Plaintiff identifies Clement again as the person Starbucks negligently hired. (Am. Compl. ¶¶ 238–230.) Defendant argues that there are no allegations that Starbucks knew or should have known that Clement was unfit for his role. (Moving Br. at 15.) Plaintiff counters that she does plead that Clement was unfit and that Starbucks failed to adequately address his conduct. (Opp'n Br. at 28 (relying on Am. Compl. ¶¶ 79–84, 103).)

To state a claim for negligent retention, supervision, and hiring, a plaintiff must allege that: 1) an employer knew or had reason to know of particular dangerous attributes, unfitness, or incompetence of an employee; 2) the employer could reasonably have foreseen that the employee's qualities created a risk of harm to others; and 3) through the employer's negligence in hiring the employee, the employee's incompetence, unfitness, or dangerous characteristics proximately caused an injury. *Grieco v. Lanigan*, Civ. No. 15-7881, 2017 WL 384689, at *5 (D.N.J. Jan. 27, 2017) (discussing law derived from *Di Cosala v. Kay*, 450 A.2d 508, 516 (N.J. 1982)).

Here, the Amended Complaint asserts that "Clement['s] lackadaisical approach to his position, his failure to provide guidance or leadership, particularly when [Plaintiff] sought it . . . caused [her] additional harm and grief." (Am. Compl. ¶ 239.) Plaintiff further alleges that there is a foreseeable risk of harm when a manager fails to lead and fails to address clear and present problems, and that harm is foreseeable when someone who suffers from substantial mental health issues is ignored by her direct supervisor. (*Id.* ¶¶ 240, 241.) These allegations, and the allegations relied upon by Plaintiff (*id.* ¶¶ 79–84, 103), may arguably suggest that Clement was unfit for his

---

[7] Clement was Starbucks' district manager at the time of Plaintiff's alleged injuries. (Am. Compl. ¶ 30.)

13

job, but the Court finds that the Amended Complaint—like Plaintiff's previous pleading—fails to articulate how Starbucks knew or had reason to know of Clement's alleged unfitness. The Amended Complaint also fails to allege, in a non-conclusory manner, that Starbucks could reasonably have foreseen Clement's actions and that they negligently hired Clement. In fact, the Amended Complaint lacks any allegations as to whether Starbucks negligently breached its duty of care in hiring, retaining, and supervising Clement. *See Grieco*, 2017 WL 384689, at *5.

Accordingly, the Court will again dismiss Count Ten as inadequately pled. *See Walker v. City of Newark*, Civ. No. 19-16853, 2020 WL 3542502, at *15–17 (D.N.J. June 30, 2020) (dismissal of negligent hiring and supervision claim because complaint lacked "any facts to suggest that [the defendant] had reason to know that any of the specific [employees] were particularly unfit, incompetent, or dangerous"); *Grieco*, 2017 WL 384689, at *5 (same). This dismissal will be without prejudice.

        **C.**        **Violation of 42 U.S.C. § 1981 (Count Two)**

Lastly, Defendant argues that Plaintiff's allegations of racial discrimination in violation of 42 U.S.C. § 1981 fail because the allegations are insufficient to support a claim that Starbucks' conduct was motivated by racial discrimination. (Moving Br. at 16.) Plaintiff argues that she adequately alleged specific facts demonstrating intentional discrimination based on race. (Opp'n Br. at 29.) Plaintiff contends that the allegations detail "a pattern of treatment that supports an inference" of racial discrimination. (*Id.* at 30 (referencing Am. Compl. ¶¶ 71, 75–76, 87).)

As the Court previously observed, to state a claim under § 1981, a plaintiff must allege that: 1) she was qualified for her employment position; 2) she suffered from an adverse employment action; and 3) the adverse employment action occurred under circumstances that would give rise to an inference of intentional discrimination. *Mieczkowski v. York City Sch. Dist.*,

14

414 F. App'x 441, 444, 445 n.2 (3d Cir. 2011) (Title VII and § 1981 have identical elements); *Iadimarco v. Runyon*, 190 F.3d 151, 157–58 (3d Cir. 1999) (membership of a minority group no longer a requirement for cases of reverse race discrimination).

Here, the Court finds that Plaintiff's allegations in the Amended Complaint do not cure the issues identified in the Court's prior decision. As before, there is no meaningful dispute that the Amended Complaint successfully pleads the first and second elements. Plaintiff was qualified for her position as Store Manager given that she received numerous performance-based awards from Starbucks during her time with the company. (Am. Compl. ¶¶ 1, 68, 69.) The Amended Complaint also adequately alleges numerous adverse acts. (*Id.* ¶¶ 1, 158, 159.)

It is with respect to the third element that Plaintiff again falters. As to intentional discrimination, the Amended Complaint alleges that, "due to Starbucks campaign to swing the pendulum in the other direction, to look like they have turned the leaf in curious their own horrible history of discrimination against African Americans, and to do so, they needed Ms. Langan to be the proverbial sacrificial lamb in the process." (*Id.* ¶ 160.) But this allegation is a sweeping, conclusory, and speculative one, without an adequate factual basis for the Court to plausibly infer that Starbucks intentionally discriminated against Plaintiff. *Sharifi v. Twp. of East Windsor*, Civ. No. 21-18097, 2023 WL 2182003, at *7 (D.N.J. Feb. 23, 2023) ("Plaintiff cannot survive a motion to dismiss based on broad, conclusory allegations, unsupported by specific facts."). If anything, the Amended Complaint makes clear that Starbucks terminated Plaintiff's employment following an investigation and hearing, because the company found that she made discriminatory comments that were "far too egregious." (*Id.* ¶¶ 88–96.) The Court will therefore dismiss without prejudice Count Two for failure to state a plausible claim. *See Smart v. Twp. of Winslow*, Civ. No. 13-4690,

2015 WL 5455643, at *3 (D.N.J. Sep. 16, 2015) (dismissing § 1981 claim because no allegations supported the conclusion that the defendant's conduct was motivated by racial discrimination).

IV. **CONCLUSION**

For the reasons stated above, the Court will **GRANT** Defendant's Motion.  Plaintiff's NJLAD claims (Counts Three, Five, and Seven) and IIED claim (Count Nine) will be **DISMISSED WITH PREJUDICE**.  Plaintiff's negligent retention, supervision, and hiring claim (Count Ten) and race discrimination claim under § 1981 (Count Two) will be **DISMISSED WITHOUT PREJUDICE** and without further leave to amend at this time.[8]

As a final note, the Court is mindful that its dismissal of Plaintiff's state law claims based on the statute of limitations is likely disappointing.  Her case does not end here, however, because she may pursue her federal claims.  An accompanying Order will follow.

Date:  June 20, 2025

s/ Zahid N. Quraishi<br>
**ZAHID N. QURAISHI**<br>
**UNITED STATES DISTRICT JUDGE**

---

[8] This denial is without prejudice to Plaintiff's right to seek leave to amend her Amended Complaint before the Magistrate Judge during discovery and as the case progresses